No. 42,933

WICHITA FROZEN FOODS COMPANY, INC., a corporation, *Appellee,* v. THE UNION NATIONAL BANK OF WICHITA, a corporation, *Appellant.*

(376 P. 2d 938)

Opinion filed December 8, 1962.

*Stanley E. Wilson,* of Wichita, argued the cause, and *Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, J. Francis Hesse, James W. Sargent, Cecil E. Merkel, Harry L. Hobson, Bruce W. Zuercher, L. D. Klenda, Loren B. Cor-*

liss and *Charles M. Cline*, all of Wichita, were with him on the briefs for appellant.

*Harold A. Zelinkoff*, of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The appellant will be designated as the "bank" and the appellees as "Frozen Foods" or the "plaintiff." Frozen Foods commenced this action based upon a breach of an implied contract to pay nothing out of its checking account except upon its valid order. The bank has appealed from the district court's order overruling its demurrer to the plaintiff's petition.

Frozen Foods alleged that it was incorporated on October 17, 1958, and that on October 24, 1958, it opened an active checking account with the bank under the name of Wichita Frozen Foods Company, Inc., with an initial deposit of $5,000, and submitted to the bank a resolution of the corporation as to authorized signatures as required by the bank, and delivered to it a signature card duly signed, which resolution and signature card were in the possession of the bank; that for a considerable period of time prior to October 24, 1958, there existed in the bank the account of an entity of similar name known as "Wichita Frozen Foods Company" which firm was either a copartnership or corporation, the exact status unknown to the plaintiff but well known to the bank; that the bank knew and had knowledge, and its bank records so showed, that plaintiff corporation and the Wichita Frozen Foods Company were separate and distinct firms.

Frozen Foods further alleged that several months prior to the filing of its petition on October 19, 1961, it discovered from an audit made of its business affairs that the bank charged and deducted from its active checking account six checks of the Wichita Frozen Food Company amounting to $2,472.35; that the said six checks of the Wichita Frozen Food Company were written by that company on its own active checking account prior to October 24, 1958, but were charged and deducted by the bank against the plaintiff's checking account after the opening thereof, and that the unauthorized deductions were reflected on monthly checking statements to Frozen Foods at the close of the months of October and November, 1958.

The petition further alleged that the bank by its monthly statements represented and stated thereby that each of said statements were true and correct statements of plaintiff's checking account be-

tween the bank and Frozen Foods when the bank knew or could have known that the monthly statements for October and November, 1958, containing the checks of the Wichita Frozen Food Company, were not correct statements of Frozen Foods' account for those months and that the said six checks, more fully described in Exhibit B attached to the petition, should have been charged to and deducted from the checking account of Wichita Frozen Food Company.

The petition further alleged that the disputed charges were made without valid order from Frozen Foods and that in accepting its checking account, the bank impliedly contracted with Frozen Foods that it would pay nothing out of its checking account except on the plaintiff's valid order; that the checks of the Wichita Frozen Food Company drawn on its own account, but charged to and deducted from Frozen Foods' checking account by the bank without a valid order of plaintiff's corporation was negligence on the part of the bank and its employees and was a breach of the implied contract.

The prayer was that plaintiff recover the sum of $2,472.35 together with 6 percent interest from November 4, 1958, and for costs.

Exhibit A attached to the petition was a copy of Frozen Foods' resolution dated October 17, 1958, and showed that funds on deposit with the bank were subject to withdrawal on the signatures of either John G. Roe, president, or Charles Huffman, vice president, and countersigned by either Maurice Bruenger, secretary, or Robert Critzer, treasurer. Exhibit B listed the checks written by Wichita Frozen Foods Company which were charged to Frozen Foods' account, and contained the date, amount, payee, signatures, date paid by the bank, and the date the checks were returned with monthly statements to Frozen Foods. The checks in question were signed by John G. Roe and Charles Huffman. Whether Roe and Huffman are the same persons whose names appear as president and vice president in Frozen Foods' resolution and signature card which was delivered to the bank is not disclosed by the record. However, it is clear from the petition that Roe and Huffman, as officers of Wichita Frozen Foods Company, were not authorized to sign checks for the withdrawal of funds from Frozen Foods' checking account. Moreover, for the purpose of this appeal, whether the checks drawn on the Wichita Frozen Foods Company's account were signed by unauthorized officers of that company is immaterial.

The bank's sole contention is that Frozen Foods' claim falls squarely within the provisions of G. S. 1949, 9-1209, which reads:

"No bank shall be liable to a depositor for the payment by it of any altered, forged or raised check, or a check with an unauthorized signature, unless the depositor shall notify such bank within six months after the return to the depositor of the voucher or canceled check that the check so paid was altered, forged, raised or unauthorized."

It argues that regardless of its negligence, the statute is applicable *in any circumstance* whereby a loss is sustained by a depositor by reason of a charge being made upon a check or checks bearing an unauthorized signature; that since the petition disclosed that the bank charged Frozen Foods' account with another depositor's checks, the signatures on the other depositor's checks were unauthorized signatures of Frozen Foods, that is, while the principal signatory was affixed in accordance with Frozen Foods' signature card on file with the bank, the counter-signatures were not, hence the signatures were "unauthorized" within the meaning of the statute, and since Frozen Foods failed to notify the bank within six months after the return of its canceled checks and monthly statements of its account the bank was relieved of liability. The contention is not easy to understand. It has the effect of excusing the bank of its negligence in charging a depositor's checking account with checks drawn upon the account of another depositor.

The parties concede that the relationship between a bank and a depositor is that of debtor and creditor; that a bank is charged with knowledge of the depositor's signature and pays an unauthorized check at its peril, and in legal contemplation such a payment is made out of the bank's own funds and it has no right to charge a depositor's account with the amount thereof; that under the doctrine of strict liability a bank is virtually an insurer of the validity of a depositor's signature and must pay checks in strict accordance with directions of a depositor. (*United Workmen v. Bank*, 92 Kan. 876, 142 Pac. 974; *Kansas City Title & Trust Co. v. Fourth Nat'l Bank*, 135 Kan. 414, 10 P. 2d 896; *Herbel v. Peoples State Bank*, 170 Kan. 620, 228 P. 2d 929; 5 Zollman, Banks and Banking, § 3411 [1954].)

This brings us to the statute (G. S. 1949, 9-1209) and to the allegations of the petition. The statute was first enacted in 1911 (Laws 1911, Ch. 64, § 1) and was revised by the Commission to Revise the Statutes in 1923 (R. S. 1923, 9-171). It was repealed in 1947 (Laws 1947, Ch. 102, § 143) and re-enacted by the same legislature (Laws

1947, Ch. 102, § 58), and the words, "or a check with an unauthorized signature" were added. In *Herbel v. Peoples State Bank,* supra, the statute was examined and construed, and it was held that the bank was not liable to the depositor for the payment of *forged checks* from the depositor's account where he failed to notify the bank within six months after the return of the canceled checks that the checks so paid were forged. Obviously, a check is forged within the meaning of the statute when the name of the depositor as maker is forged. It is altered or raised when the body as originally executed is changed or when the amount as originally executed is increased. We think the words "a check with an unauthorized signature" must be construed to mean something other than an altered, forged, or raised check, and was intended by the legislature to mean a check to which the depositor's name as maker is signed by a purported agent without authority.

When the petition is carefully analyzed it alleges that Frozen Foods made a deposit with the bank and delivered the signatures of its officers on a signature card provided by the bank, who were authorized to withdraw funds of the plaintiff; that through the negligence of the bank's employees, checks drawn upon the account of another depositor, that is, the Wichita Frozen Foods Company, were charged to and deducted from the separate checking account of Frozen Foods, and that despite the unauthorized deductions, the bank has never credited said account with $2,472.35 nor paid the plaintiff that amount.

The petition discloses no scheme by Roe and Huffman to draw checks on Frozen Foods' account for their own purpose, or that they drew the checks upon Frozen Foods' account and signed their names as purported agents without authority. On the contrary, the petition alleged that an implied contract existed between the bank and Frozen Foods and was breached by the negligence of the bank in charging the checks and deducting their amounts from plaintiff's account.

No point is made that Frozen Foods cannot now maintain this action which was commenced approximately two and a half years after the canceled checks and statements were returned to it in October and November, 1958, and the bank was well advised not to make such a contention. (G. S. 1949, 60-306, *Second; Kansas City Title & Trust Co. v. Fourth Nat'l Bank,* supra, p. 245; *Herbel v. Peoples State Bank,* supra, p. 627).

We have examined *Valley Nat. Bank of Phoenix v. Electrical Dist. No. 4,* 90 Ariz. 306, 367 P. 2d 655 (1961), cited by the defendant. There, an employee of the district, without authority and before delivery to the bank, added his name on the district's signature card as a person authorized to sign checks on behalf of the district. Thereafter he drew checks on the district's account for his own purposes. Later it was discovered his signature was not authorized. The supreme court of Arizona correctly concluded that the provisions of a statute similar to our own were applicable to the employee's "unauthorized" signature and barred recovery for noncompliance to the condition precedent on the part of the district to give the bank notice of the unauthorized payment within the six-months period. Obviously, that is not the case here.

Under the allegations of the petition G. S. 1949, 9-1209 is not applicable and the district court did not err in overruling the bank's demurrer.