No. 50,622

THE CAIRO COOPERATIVE EXCHANGE, *Appellant,* v. THE FIRST NA-
TIONAL BANK OF CUNNINGHAM, *Appellee.*

(620 P.2d 805)

Opinion filed December 6, 1980.

*J. Eugene Balloun,* of Payne & Jones, Chartered, of Olathe, argued the cause
and *L. Franklin Taylor* and *Ronald L. Bodinson,* of the same firm and *Terry D.
Bertholf,* of Hutchinson, were with him on the brief for the appellant.

*Thomas L. Theis,* of Sloan, Listrom, Eisenbarth, Sloan and Glassman, of
Topeka, argued the cause and *David D. Gaumer,* of Wunsch, Wunsch, Gaumer &
Solomon, of Kingman, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an action by a customer against a bank for its
improper payment of certain checks over forged and restrictive
indorsements. The trial court entered summary judgment for the
bank. This appeal followed.

The agreed-upon facts are as follows. Plaintiff is a farm coop-

erative engaged in the usual business of buying and selling farm products and supplies. Its principal place of business is Cairo in Pratt County with a branch office at Cunningham in Kingman County. In 1963 it employed one K. C. Jones and, in 1969, the company named him manager of the Cunningham branch. Plaintiff maintained a checking account with defendant bank in which it regularly deposited and withdrew funds. As manager of plaintiff's Cunningham branch, Jones signed and delivered a bank signature card to defendant. The card designated Jones as the person authorized to draw checks on the Co-op account.

From September 30, 1969, to March 6, 1976, Jones caused 101 checks to be issued for various amounts to various customers. The checks were signed by Jones on behalf of plaintiff. The checks were drawn on plaintiff's regular check forms payable to customers of plaintiff. Jones obtained cash from the checks by forging the customer's indorsement or by a combination of forging the indorsement and stamping a Co-op restrictive indorsement on the checks. We are concerned here only with the latter checks. Appellant has abandoned its appeal regarding the checks which were cashed solely from the forged indorsement.

Jones cashed 91 checks in the total amount of $46,564.46 upon which appeared the Co-op's restrictive indorsement, which stated: "Pay to the order of First National Bank, Cunningham, Kansas. For Deposit Only, Cairo Co-op Equity Exchange, Farmer's Co-op." The checks were then presented to defendant by Jones for cash. None of the checks were listed on a deposit slip nor were they deposited to plaintiff's account. Jones retained the funds obtained from the checks and his whereabouts are now unknown.

In its petition, plaintiff alleged breach of contract, conversion (K.S.A. 84-3-419), and negligence and failure to exercise good faith and ordinary care (K.S.A. 84-4-103). Defendant generally denied the allegations of the petition. Both parties filed motions for summary judgment. The trial court granted defendant a summary judgment with findings and conclusions of law stating:

"[T]he gravamen of plaintiff's first cause of action is a breach of an alleged legal duty that arises independent of contract and arises out of the circumstances surrounding or attending the transaction between the parties and therefore its action sounds in tort and not contract, and this conclusion provides additional support for the Court's ruling granting defendant summary judgment on plaintiff's first cause of action."

The court made no specific ruling on the theory of conversion but instead ruled on the question of restrictively indorsed checks as follows:

"17. The provisions of K.S.A. 84-4-103 make it possible for parties to vary by agreement the proscription of K.S.A. 84-3-206(4) relating to payment over a restrictive indorsement.

"18. K. C. Jones, acting within the scope of his employment and pursuant to the express authority granted him in the depositor's contract and his implied and apparent authority to transact all business for the Cunningham branch, relieved the defendant (as allowed by K.S.A. 84-4-103) of any obligation it may have had to apply the proceeds of the checks consistent with any restrictive indorsement, through his course of dealing and course of performance with the bank (see K.S.A. 84-1-201[3]) and defendant is therefore entitled to summary judgment on plaintiff's cause of action founded on the restrictively indorsed checks.

. . . . .

"24. Since plaintiff, through its authorized agent, relieved the bank of any obligation to apply the proceeds of the restrictively indorsed checks consistent with the restrictive indorsement, all the checks fall under the Fictitious Payee Rule of K.S.A. 84-3-405."

The trial court then concluded the plaintiff received the cash from the checks because Jones, plaintiff's agent, was acting within the scope of his employment.

The trial court considered the remaining claim of negligence and found no evidence of bad faith on the part of the bank but found plaintiff Co-op contributorily negligent by hiring Jones and clothing him with blanket authority over the financial affairs of the Cunningham elevator, thereby placing him in a position to defraud the company. It also found the Co-op negligent in failing to discover the fraud sooner and in carrying on a course of conduct for six years which lulled the bank into believing Jones had authority to do what he was doing.

K.S.A. 84-3-205 covers the definition of restrictive indorsements:

"An indorsement is restrictive which either

(a) is conditional; or

(b) purports to prohibit further transfer of the instrument; or

(c) includes the words 'for collection,' 'for deposit,' 'pay any bank,' or like terms signifying a purpose of deposit or collection; or

(d) otherwise states that it is for the benefit or use of the indorser or of another person."

The effect of such indorsements is set out in K.S.A. 84-3-206, which provides in part:

"(3) Except for an intermediary bank, any transferee under an indorsement which is conditional or includes the words 'for collection,' 'for deposit,' 'pay any bank,' or like terms (subparagraphs (*a*) and (*c*) of section 84-3-205) must pay or apply any value given by him for or on the security of the instrument consistently with the indorsement and to the extent that he does so he becomes a holder for value. In addition such transferee is a holder in due course if he otherwise complies with the requirements of section 84-3-302 on what constitutes a holder in due course."

The evidence is uncontroverted the 91 checks all bore restrictive indorsements and all were paid to Jones by the depositary bank in violation of the restrictive indorsement. It is argued Jones, as general manager of the Cunningham branch, orally varied the duty imposed by the restrictive indorsement when he requested cash rather than a credit to the Co-op account. This argument relies on K.S.A. 84-1-102(3) which states in part:

"(3) The effect of provisions of this act may be varied by agreement . . . ."

Code analysis is not supportive of that position. In an Article 9 context, the Texas Court of Civil Appeals in *Davis v. Small Business Inv. Co. of Houston,* 535 S.W.2d 740 (Tex. Civ. App. 1976), holds the parties' intention to modify the duties imposed by the UCC must be clear, and modification will not be implied from ambiguities in their written agreement. There are sound policy reasons for requiring strict construction of modifications by agreement which change the legal consequences of restrictive indorsements. K.S.A. 84-3-414 specifically requires indorsements be in writing and an indorser's disclaimer of liability through a "no recourse" indorsement must be written on the instrument and cannot be proven by parol. See Official Comment, K.S.A. 84-3-414.

In the case at bar, there is no evidence, other than course of conduct of plaintiff in violation of the UCC, to indicate modification of K.S.A. 84-3-206 and the resulting release of the bank from liability. Case law does not support the argument that a course of conduct can vary the duties imposed by a restrictive indorsement or ratify conduct contrary to reasonable commercial standards, and defendant bank cannot assert the defense of estoppel where it failed to act with ordinary care. K.S.A. 84-4-406(3). *Kraftsman Container v. United Ctys. Trust Co.,* 169 N.J. Super. 488, 404 A.2d 1288 (1979), illustrates this point. Kraftsman's employee was authorized to draw checks from Kraftsman on its account with defendant bank. The employee wrote checks

to fictitious payees and forged an indorsement on them, usually illegible, and cashed the checks. Some were even cashed without indorsement. This scheme lasted four years. The failure of the bank to question the employee about the irregularly presented checks evidenced a lack of good faith. The court stated, "[B]ad faith may be evidenced by a consistent failure by the bank to monitor and investigate a series of irregular transactions." *Kraftsman* at 497.

In *Underpinning v. Chase*, 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319 (1979), employee Walker embezzled money from the company by writing checks to payees, obtaining the company signatures and forging a restrictive indorsement thereon. Several depositary banks accepted the checks and deposited the proceeds to Walker's account in violation of the restrictive indorsement. Underpinning sued the depositary banks. The court held where the forgery is effective, the drawer could have several causes of action against the drawee including conversion of proceeds of the check; liability for money had and received; or conversion of the instrument itself. The court stated:

"In summary, we hold today that a drawer may directly sue a depositary bank which has honored a check in violation of a forged restrictive indorsement in situations in which the forgery is effective. This result is not only theoretically viable, but is in accord with principles of equity and sound public policy. It is basic to the law of commercial paper that as between innocent parties any loss should ultimately be placed on the party which could most easily have prevented that loss. Hence, in most forged indorsement cases, the party who first took the check from the forger will ultimately be liable, assuming of course that there is no solvent forger available. This is so because it is the party who takes from the forger who is in the best position to verify the indorsement. . . .

". . . The presence of a restriction imposes upon the depositary bank an obligation not to accept that item other than in accord with the restriction. By disregarding the restriction, it not only subjects itself to liability for any losses resulting from its actions, but it also passes up what may well be the best opportunity to prevent the fraud. The presentation of a check in violation of a restrictive indorsement for deposit in the account of someone other than the restrictive indorser is an obvious warning sign, and the depositary bank is required to investigate the situation rather than blindly accept the check. Based on such a failure to follow the mandates of due care and commercially reasonable behavior, it is appropriate to shift ultimate liability from the drawer to the depositary bank." *Underpinning* at 468-469.

Finally, in *C. S. Bowen Co. v. Maryland Nat'l Bank*, 36 Md. App. 26, 36, 373 A.2d 30 (1977), the court dealt with a suit by a

drawer against a depositary bank for failing to abide by a restrictive indorsement. The court stated, referring to Maryland UCC 3-206(3) [K.S.A. 84-3-206(3)]:

"This section and other sections of the U.C.C. dealing with restrictive indorsements make it clear that a depositary bank that does not apply an instrument consistently with a restrictive indorsement is liable in conversion."

It is clear the defendant is liable to plaintiff for failing to honor the restrictive indorsement unless Jones modified the dictates of the indorsement by his action in requesting cash. We find no evidence to support modification. Jones and the bank entered into a contract commonly called a signature card. Nothing in that contract can be construed as an agreement to vary the application of K.S.A. 84-3-206(3). The only evidence of an agreement to vary is Jones' course of conduct. As we have previously indicated, good practice dictates that an agreement to vary a restrictive indorsement be in writing and noted on the instrument by a person with proper authority. We so hold.

We have stated the nature of the action, whether tort or contract, is determined by the pleadings and proof. *Malone v. University of Kansas Medical Center,* 220 Kan. 371, 374, 552 P.2d 885 (1976). Here, plaintiff asserted the following claims in the alternative: breach of an express or implied contract, conversion and negligence. The cases we have previously cited which establish the liability of a bank for violating a restrictive indorsement all speak of conversion as the remedy against a depositary bank. See *Kraftsman Container v. United Ctys. Trust Co.,* 169 N.J. Super. 488; *Underpinning v. Chase,* 46 N.Y.2d 459; and *C. S. Bowen Co. v. Maryland Nat'l Bank,* 36 Md. App. 26. We do not, however, interpret this to indicate conversion as the exclusive remedy. Breach of contract is also available in this case.

Appellant bank, in addition to being the depositary bank (K.S.A. 84-4-105[*a*]) is also the drawee or payor bank (K.S.A. 84-4-105[*b*]). Clark and Squillante, The Law of Bank Deposits, Collections and Credit Cards (1970) states at page 28:

"The relationship between the drawee bank and its customer as drawer of a check is primarily based on the deposit contract. The demand deposit account creates a debtor-creditor relationship which is reversed to the extent that overdrafts enter the picture."

This court has held that absent a special agreement, an implied contract arises from this debtor-creditor relationship. *Wichita*

*Frozen Foods Co., Inc., v. Union National Bank of Wichita,* 190 Kan. 539, Syl. ¶ 2, 376 P.2d 933 (1962).

The express agreement in this case is the signature card, designated "Depositor's Contract." The contract does not contain a provision requiring appellant bank to honor restrictive indorsements placed on checks. We have held, however, it is presumed parties enter into contracts with reference to existing law. *Steele v. Latimer,* 214 Kan. 329, 336, 521 P.2d 304 (1974). The rule of law expressed in 17 Am. Jur. 2d, Contracts § 257, pp. 654-656, adopted in *Steele* on page 336 provides in part:

" '[Parties] are presumed to have in mind all the existing laws relating to the contract, or to the subject matter thereof. Thus, it is commonly said that all existing applicable or relevant and valid statutes, ordinances, regulations, and settled law of the land at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention. . . .' "

See 4 Williston on Contracts § 615 (3rd ed. 1961).

We find, absent an expressed intent of the parties to the contrary (see K.S.A. 84-1-102[3]), the provisions of the Uniform Commercial Code governing Commercial Paper (Article 3) and Bank Deposits and Collections (Article 4) are made express provisions of the depositor's contract. Accordingly, we find the bank as drawee liable for breach of the express contract with its depositor. In light of the foregoing, it is unnecessary to discuss plaintiff's alternative claims of breach of implied contract and negligence.

We hold the plaintiff in this case has proven a case of conversion and breach of contract. The judgment of the trial court and Court of Appeals is affirmed as to the 10 checks without restrictive indorsements in the amount of $9,229.18 and is reversed as to the 91 checks with restrictive indorsements. The case is remanded to the trial court with orders to enter judgment accordingly with interest at 8% from the date of wrongful payment with the costs to be apportioned between the parties.

McFARLAND, J., dissenting in part and concurring in part. I concur with the result reached by the majority as to the 10 checks without restrictive indorsements, totaling $9,229.18. I dissent from the result reached as to the 91 checks with restrictive indorsements, totaling $46,564.46.

Basically, I concur with the Court of Appeals opinion herein

(*Cairo Cooperative Exchange v. First Nat'l Bank of Cunningham,* 4 Kan. App. 2d 458, 608 P.2d 1370 [1980]). I would affirm in toto the trial court's entry of judgment in favor of the defendants. I feel, however, some additional comments are appropriate.

The majority opinion illustrates a problem all too frequently encountered when the Uniform Commercial Code is applied to the facts in particular cases. Before stating the problem, some background comments must be made. Prior to the enactment of the UCC, the law of commercial transactions was scattered over a number of particular subject areas. Attorneys were trained in the former law and felt comfortable with it. The applicable law was neatly categorized with such titles as "negotiable instruments law," "warehouse receipts act," "uniform stock transfer act," etc. The codification of all the various categories into one voluminous and rather inscrutable act was a difficult adjustment. Even today an attorney often wanders through the Code searching for *the* applicable provision. Upon encountering *an* applicable provision, he hoists his discovery high with a cry of "Eureka!" and is satisfied *the* provision is *the* entire applicable law. Unless some other provision in the Code can be found that specifically and expressly modifies that particular provision, then *the* provision is all the law on the subject.

The danger in isolating a provision in the Code and considering it in a vacuum is apparent. The one provision controls the outcome of the litigation—irrespective of other general provisions of the Code or other applicable principles of law. Certainly, when a person places a restrictive indorsement on a check, directing the bank to deposit the check in the person's bank account, it is an instruction to the bank to do just that. K.S.A. 84-3-206. Simple, common sense reaches that result, with or without a Code provision. But the Code does not state that failure to follow the instruction results in absolute liability to the bank in all circumstances.

Under the rationale of the majority opinion, if I take a check payable to me, with my restrictive "for deposit only" indorsement to the bank I regularly patronize, and advise the teller I have changed my mind and want cash, then I must be paid twice for my check if the bank follows my instructions. This is not and cannot be the law.

The UCC acknowledges variation by agreement in K.S.A. 84-1-102 as follows:

"(3) The effect of provisions of this act may be varied by agreement, except as otherwise provided in this act and except that the obligations of good faith, diligence, reasonableness and care prescribed by this act may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.

"(4) The presence in certain provisions of this act of the words 'unless otherwise agreed' or words of similar import does not imply that the effect of other provisions may not be varied by agreement under subsection (3)."

Other principles of law are made applicable to commercial transactions by K.S.A. 84-1-103, which provides:

"Unless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

Kansas has recognized that the law of principal and agent, estoppel, etc., supplements the Code. *Service Iron Foundry, Inc. v. M. A. Bell Co.,* 2 Kan. App. 2d 662, 588 P.2d 463 (1978); *Leaderbrand v. Central State Bank of Wichita,* 202 Kan. 450, 453, 450 P.2d 1 (1969); and *Meador v. Ranchmart State Bank,* 213 Kan. 372, 517 P.2d 123 (1973).

The trial court made the following findings of fact which are unchallenged on appeal:

"3. That plaintiff, thru the Cunningham branch, at all times pertinent to this suit was a customer of defendant and has maintained a checking account with defendant, No. 00-134-1, and regularly deposited funds with defendant and withdrew the same. That shortly after K. C. Jones became manager of the Cunningham branch, a bank signature card was signed by K. C. Jones, authorized by the Co-op general manager, and placed in the files of the bank. K. C. Jones was the only authorized signature on the card and was the only person signing checks on the account during the time in question in this suit. There was no requirement or arrangement for a co-signature. The signature card is the only written agreement between plaintiff and defendant and reads as follows:

" '*The corporation, and each and all of its officers, agents, and employees whose signatures appear hereon, hereby represent to said Bank that said corporation is duly and legally authorized to transact business, and that each of its officers, agents, and employees whose signatures appear hereon are now duly authorized by said corporation to represent and act for said corporation in all its transactions with said Bank. Said corporation further agrees to promptly notify said bank in writing of any change in their authority to so act.'*

"7. Plaintiff never notified the defendant of any restrictions upon the authority

of K. C. Jones to act for the plaintiff in the plaintiff's transactions with the defendant until after Jones was fired.

"8. The plaintiff never notified the bank that there was any restriction on the amount of cash that could be received from the plaintiff's account by the branch manager.

"9. K. C. Jones had authority to write a check for cash on the corporate account and obtain cash for the check.

"10. In the mind of the community in Cunningham, K. C. Jones was the cooperative in Cunningham, and had authority to transact all business for the Cunningham branch and was authorized to do anything but embezzle."

. . . .

"12. That neither the defendant nor any of its officers or employees had actual knowledge of the alleged scheme of K. C. Jones to defraud plaintiff." (Emphasis added.)

These facts amply support judgment for the defendants under the applicable laws of estoppel and principal and agent.

Additionally, as noted by the Court of Appeals in the *Cairo Cooperative Exchange* case, 4 Kan. App. 2d at 467-468:

"It is to be borne in mind that none of the checks here involved contained alterations or omissions sufficient to alert bank personnel to anything out of the ordinary. As far as defendant was concerned, it was the drawer of the check who stood before the teller's window and demanded payment in cash. There is nothing in this record to indicate anything other than good faith in the transactions on the part of defendant. Nor is there anything in the record to indicate, or is it even alleged, that defendant's transactions with plaintiff as conducted by its agent were a departure from reasonable commercial standards of defendant's business. Moreover, any failure of defendant to exercise ordinary care in handling the various items in question is offset by plaintiff's own negligence, as previously discussed. *Cf. Hanover Ins. Companies v. Brotherhood State Bank,* 482 F. Supp. 501 (D. Kan. 1979)."

The facts of this case are readily distinguishable from the three cases relied on by the majority.

*Underpinning v. Chase,* 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319 (1979), involves restrictive indorsements on corporation checks, but the checks were prepared by an underling, signed by an innocent officer and cashed at the bank by the underling under highly suspicious circumstances. I agree with the result reached.

*C. S. Bowen Co. v. Maryland Nat'l Bank,* 36 Md. App. 26, 36, 373 A.2d 30 (1977), involves an embezzling bookkeeper who had corporation checks with restrictive indorsements deposited in her own checking account. The bank's gross negligence was clear. I agree with the result.

*Kraftsman Container v. United Ctys. Trust Co.,* 169 N.J. Super. 488, 404 A.2d 1288 (1979), does not involve restrictive indorsements, although it does have an embezzling bookkeeper-treasurer and checks made out to fictitious payees. The court held that simple negligence on the part of the bank does not affect the operation of the UCC provision deeming effective indorsements by anyone in the name of a fictitious payee, but bad faith bars the bank from invoking such provision to defeat the customer's claim. Additionally, the court held that bad faith, such as to preclude the bank from invoking the UCC provision deeming effective indorsement by anyone in the name of a fictitious payee to bar customer's claim, may be evidenced by consistent failure by the bank to monitor and investigate a series of irregular transactions, and in such case effective indorsements do not relieve the bank from liability if there is proof of course of dealing so irregular in nature that the bank is shown to have violated its own policies and to have failed to act according to the standard of honesty-in-fact required under the Code.

I would affirm the trial court and the Court of Appeals for reasons expressed herein and in the opinion of the Court of Appeals.

PRAGER, J., joins the foregoing dissenting and concurring opinion.