CONTINENTAL AIRLINES,
INC., Plaintiff–Appellee,

v.

The BOATMEN'S NATIONAL BANK OF
ST. LOUIS, Defendant–Appellant.

No. 93–1546.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1993.

Decided Jan. 13, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Feb. 25, 1994.*

* Fagg and Bowman, JJ., would grant suggestion for rehearing en banc. Loken, J., not participating.

Ronald A. Norwood, St. Louis, MO, argued (Robert B. Hoemeke, on the brief), for defendant-appellant.

Diane B. Davies, Denver, CO, argued, for plaintiff-appellee.

Before JOHN R. GIBSON *, FAGG, and BEAM, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

This appeal is about the proceeds of a check for $683,505.24 which was wire transferred to the wrong company now in bankruptcy, and which party should bear the loss. Boatmen's National Bank of St. Louis, under its contractual arrangements with Continental Airlines, obtained a check payable to Continental from the Military Airlift Command in payment of Continental's transportation service to the Command. The Command placed Continental's name and a code number on the check. Boatmen's followed the code number rather than the name, and wire transferred the check proceeds to an account of First Southern Financial Corporation of Sanford in Fayetteville, North Carolina.

The district court[1] entered summary judgment in favor of Continental on its claims against Boatmen's. On appeal, Boatmen's argues that the district court erred in entering summary judgment because: (1) the exculpatory and indemnification provisions in the Remittance Processing and Wire Transfer Agreements between Continental and Boatmen's defeat Continental's claims; and (2) there are disputed questions of fact precluding the entry of summary judgment. We affirm the district court's judgment, but on grounds other than those articulated in its order.

On April 1, 1986, Continental entered into an agreement with Boatmen's (then known as Centerre Bank, N.A.) for the processing and payment of government checks from the Military Airlift Command to Continental. This service, called government lock box "Remittance Processing," provided Continental with access to payments from the Command via next-day wire transfers. The agreement contained an indemnification and hold harmless provision.

On March 25, 1986, Boatmen's sent a letter to Continental asking Continental to send a letter of authorization to its payor office (in this case, the Command) changing the payment address to include Continental's lock box identification number. Continental sent a letter dated April 1, 1986, notifying the bank of its payment address, including its assigned lock box number, and authorizing the bank to collect payments due from the Command at Scott Air Force Base. The bank forwarded this letter to headquarters of the Command asking if the letter provided sufficient authorization from Continental. On June 30, 1986, the bank accepted a Wire Transfer of Funds Agreement from Continental, authorizing the bank to transfer funds from specific customer accounts to any other customer bank accounts. This agreement also contained an indemnification provision.

Boatmen's assigned unique lock box identification numbers, called LBIDs, to each of its

* The HONORABLE JOHN R. GIBSON, was circuit judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri. Judge Hungate retired on June 30, 1992.

remittance processing customers. Under this procedure the bank arranged for courier pickup of checks and credited the proceeds to the designated accounts. The processing arrangement between Continental and Boatmen's was straightforward. A Boatmen's courier picked up government checks payable to Continental from the Command at Scott Air Force Base in Illinois once a day. At Boatmen's request, Continental authorized the Command to place Continental's LBID on the government checks to be processed by Boatmen's. The courier delivered the checks to a Boatmen's bank in St. Louis, where Boatmen's sorted, copied, and routed the checks. Boatmen's then forwarded the original check to the Federal Reserve Bank in St. Louis for payment and sent a copy of the check to Continental. The check proceeds were then transferred, either the same or next day, to Continental's account at Chase Manhattan Bank in New York. Although Continental maintained a demand deposit account at Boatmen's, Boatmen's credited an internal account pending the wire transfer.

On August 17, 1990, Continental billed the Command $683,505.24 for transportation charges. Continental completed the section "payee's Name and Address" as follows:

Continental Airlines
CO/ Boatmen's Natl Bk., St. Louis
Scott Air Force Base, IL 62225

The address did not include the LBID assigned to Continental.

On August 29, 1990, Boatmen's received a $683,505.24 check drawn by the Command payable to Continental, but containing the LBID of another government lock box customer of Boatmen's, First Southern. The Command designated the payee as: "Continental Airlines, LBID 700039 HIC." Boatmen's endorsed the check:

BOATMEN'S NATL
BANK OF ST
LOUIS MO
CREDIT PAYEE
4–3 Lock box 4–3
WITHOUT
PREJUDICE
081000032

The check was presented to the Federal Reserve Bank in St. Louis and it cleared.

Relying on the LBID designated by the Command, Boatmen's processed the check for LBID 700039, not Continental's LBID 70009, and on August 30, 1990, Boatmen's wire transferred $683,505.24 to First Southern's account at a bank in North Carolina. Boatmen's also forwarded a copy of the check to First Southern.

During this same time period, Boatmen's sent "Account Batch Listings" to Continental. These statements identified the items processed, the dollar amount of the items processed, and the date of the wire transfer. The Command check was not included in these listings.

Continental notified Boatmen's in February 1991 that it had not received the $683,-505.24 from the Command. On April 4, 1991, Continental sued Boatmen's to recover the amount, asserting four theories of recovery: breach of contract, final settlement under Mo.Rev.Stat. § 400.4–213(3) (1986), negligence, and conversion. Boatmen's filed a counterclaim against Continental based on the indemnification provisions in the governing agreements, and also filed a third-party complaint against First Southern. Boatmen's moved for summary judgment against First Southern, and Boatmen's and Continental filed summary judgment motions against each other.

The district court granted Boatmen's motion for summary judgment against First Southern for $683,505.24. *Continental Airlines, Inc. v. Boatmen's Nat'l Bank*, No. 91–0658C(3), slip op. at 13 (E.D.Mo. Apr. 1, 1992). The district court also granted Continental's motion for summary judgment against Boatmen's for $683,505.24, and denied Boatmen's cross-motion for summary judgment against Continental based on the indemnity provisions contained in the agreements and the alleged negligence of Continental. *Id.* at 14. The court explained:

It is apparent that the $683,505.24 was payment to Continental by [the Command] for services rendered. Accordingly, this Court will effect the return of that sum to Continental. In order to accomplish that

end, the Court must engage in a reverse routing of the money from First Southern, through Boatmen's, then back to Continental.

*Id.* at 7.

Boatmen's filed a Motion to Amend Judgment seeking to clarify the language in the order. Boatmen's sought to amend the judgment to condition its liability to Continental upon its recovery from First Southern. Continental filed a similar motion seeking to clarify Boatmen's liability to Continental regardless of whether Boatmen's recovered from First Southern. The case was then transferred to the Honorable George F. Gunn, Jr., following Judge Hungate's retirement. The district court denied both parties' motions, explaining that the court's order:

> grants judgment against First Southern in favor of Boatmen's and therefore provides Boatmen's the opportunity to recover the entire amount that it is obligated to Continental. In all judgments, a risk exists that the prevailing party cannot recover the entire amount the Court awards. The Court will not amend the order ... because the language of the judgment is absolute.

*Continental Airlines, Inc. v. Boatmen's Nat'l Bank,* No. 91–0658C(6), 1993 WL 566493, slip op. at 3 (E.D.Mo. Feb. 9, 1993). Boatmen's appeals.

### I.

Boatmen's argues that the district court was seeking an equitable result, which has been frustrated by the insolvency of First Southern.[2] Continental is not entitled to summary judgment, Boatmen's argues, because of the exculpatory and indemnification provisions contained in the governing agreements. Pointing to the findings of the district court that Continental agreed to accept the risk of loss and that this agreement was not against public policy, Boatmen's argues that the district court's findings are inconsistent with its entry of summary judgment for Continental. Boatmen's essentially argues that remittance processing, including the

wire transfer of funds, is but one part of an arrangement to facilitate the next day wire transfer of funds.

 Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We give the non-moving party the benefit of all reasonable inferences to be drawn from the facts. *Wymore State Bank v. Johnson Int'l Co.,* 873 F.2d 1082, 1085 (8th Cir.1989).

Continental contends that the transaction giving rise to this dispute is governed by Articles 3 and 4 of the Uniform Commercial Code as adopted in Missouri, and that we may affirm the judgment on this ground. *See Schweiker v. Hogan,* 457 U.S. 569, 585 & n. 24, 102 S.Ct. 2597, 2607 & n. 24, 73 L.Ed.2d 227 (1982) (appellate court may affirm district court's judgment on any ground appearing in the record). Continental's argument rests on the assumption that the remittance processing procedure by which the bank obtains and endorses the check is distinct from the wire transfer transaction. From this assumption, Continental argues that Boatmen's agreement to process Command checks payable to the order of Continental qualified Boatmen's as a "depositary bank" and a "collecting bank" under Mo.Rev. Stat. § 400.4–105(a) and (d) (1986).[3] Continental concludes that as a collecting bank, Boatmen's owes Continental the full amount of the check under Mo.Rev.Stat. § 400.4–213, and as a depositary bank, Boatmen's is liable for conversion under Mo.Rev.Stat. § 400.3–419.

More specifically, Continental argues that when Boatmen's received the $683,505.24 check, it acted as an agent for its customer, Continental. Mo.Rev.Stat. § 400.4–104(1)(e) ("Customer" defined as "any person having an account with a bank or for whom a bank has agreed to collect items ..."). Continental argues further that when Boatmen's successfully collected on the check, Boatmen's

---

**2.** First Southern filed a Chapter 7 Bankruptcy Petition on July 8, 1992, estimating that no funds would be available for distribution to unsecured creditors.

**3.** The Missouri Uniform Commercial Code was revised in 1992. Citations in this opinion are to Code sections in effect in 1990.

became the debtor of its customer, Continental, for $683,505.24. Mo.Ann.Stat. § 400.4-201 U.C.C. cmt. 4 (Vernon 1965) ("At some stage in the bank collection process the agency status of a collecting bank changes to that of debtor, a debtor of its customer.") Thus, Continental contends that Boatmen's is liable as a collecting bank under Mo.Rev.Stat. § 400.4-213(3) which provides: "If a collecting bank receives a settlement for an item which is or becomes final ... the bank is accountable to its customer for the amount of the item...."

Continental also argues that Boatmen's, in its capacity as a depository bank, is liable for conversion under Mo.Rev.Stat. § 400.3-419 for payment of the check inconsistently with a restrictive endorsement. Continental contends that Boatmen's had authority under the Remittance Processing Agreement to endorse the check "credit payee," and because "credit payee" is a restrictive endorsement, Mo.Rev.Stat. § 400.3-205,[4] Boatmen's was obligated to credit the account of the named payee, Continental.

Boatmen's responds that because the purpose and intent of this arrangement was to facilitate the next day wire transfer of funds, Articles 3 and 4 of the U.C.C. do not apply. Boatmen's points out that Continental did not maintain a demand deposit account for credit pending wire transfer, and that the exculpatory and indemnification provisions bar recovery under Missouri common law. Second, Boatmen's cites several cases which have rejected the application of Articles 3 and 4 to issues surrounding wire transfers, as well as Article 4A of the U.C.C. (adopted in Missouri in 1992) which governs funds transfers. Mo.Rev.Stat. § 400.4A-101-400.-4A-507 (Cum.Supp.1992). Boatmen's also argues that even if Articles 3 and 4 govern this transaction, no conversion occurred because it paid the check as directed by the lock box number reflected on the check.

■ We are convinced that Articles 3 and 4 of the U.C.C. govern this dispute. The significant event which fixed the bank's liability was the receipt and endorsement of the

check, and the check's presentation to and payment by the Federal Reserve Bank. The misdirected wire transfer was simply the method by which the bank breached its duty with respect to the check. Although Missouri did not adopt the Uniform Commercial Code Funds Transfers until 1992, and so it does not control this case, the comment to the Act states that if a check includes a payment order, or is accompanied by a payment order, "the instruction to Beneficiary's Bank is a payment order," and thus, falls under 4A of the Act, "but the check itself ... is an instrument under Article 3." Mo.Ann. Stat. § 400.4A-104 U.C.C. cmt. 5 (Vernon Supp.1992).

■ The addition of the lock box identification number on the face of the check did not change the identity of the payee. Under Mo.Rev.Stat. § 400.3-117(c), "an instrument made payable to a named person with the addition of words describing him in any ... manner is payable to the payee unconditionally...." The comment to the Missouri statute explains that "[a]ny other words of description, such as 'John Doe, 1121 Main Street,'" are merely words of identification, and not a condition of payment. Mo.Ann. Stat § 400.3-117 U.C.C. cmt. 3 (Vernon 1965). Contrary to Boatmen's argument, the inclusion of the lock box identification number does not convert the named payee from Continental to the lock box number. Accordingly, we reject Boatmen's argument that it paid the check in accordance with the endorsement because it credited the account corresponding to the lock box number.

Boatmen's also contends that the indemnification provisions in the Remittance Processing and Wire Transfer Agreements absolve it of any liability. The Remittance Processing Agreement contained an indemnification and hold harmless provision, protecting Boatmen's from:

> any and all claims ... which [Boatmen's] at any time shall or may sustain or incur by reason of (a) inadvertently processing any checks contrary to the instructions, or

---

4. An endorsement is restricted if it "includes the words 'for collection,' 'for deposit,' 'pay any bank,' or like terms signifying a purpose of deposit or collection." Mo.Rev.Stat. § 400.3-205(c).

other error of judgment, made in good faith, (b) failure to perform, or perform within time schedule agreed, or properly or accurately perform any service whatsoever in connection with check processing.... In the ordinary course of business, checks may be processed contrary to instructions, although Bank will use its best efforts to process in accordance with the Instructions.

The Remittance Processing Agreement also stated that Continental agreed "to be bound by the terms of the ... Wire Transfer of Funds Agreement as to all funds which are to be transferred by wire transfer to [Continental]." The Wire Transfer of Funds Agreement also contained a hold harmless provision protecting the Bank from:

> any and all claims ... arising directly or indirectly out of transfer requests or orders initiated pursuant to this Agreement or *in any other way connected with the arrangements provided for herein,* except for liability to Customer for direct losses (to the exclusion of any consequential or special loss or damage) occasioned by the Bank's gross negligence or lack of good faith....

(Emphasis added).

Boatmen's argues that the agreements are enforceable because there is no showing of a lack of good faith or failure to exercise ordinary care. *See* Mo.Rev.Stat. § 400.4–103(1) ("[N]o agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care."). Boatmen's argues that it acted in good faith and exercised ordinary care, citing evidence that banks generally direct check proceeds to lock box identification numbers, rather than named payees. Boatmen's argues that, at the very least, there exists a question of fact as to whether it exercised ordinary care.

■ Continental responds that the indemnification provisions do not protect Boatmen's from liability. In Missouri, parties may contractually allocate the risk of loss. *See, e.g.,* Mo.Rev.Stat. § 400.4–103(1); *Rock Springs Realty, Inc. v. Waid,* 392 S.W.2d 270, 272 (Mo.1965). There are, however, two reasons why the agreements in this case do not protect Boatmen's actions. First, Boat-

men's cannot disclaim failure to exercise ordinary care. *See* Mo.Rev.Stat. § 400.4–103(1). There are a number of cases which hold that a bank's failure to process a check consistently with a restrictive endorsement constitutes lack of ordinary care as a matter of law. *See, e.g., Cairo Coop. Exch. v. First Nat'l Bank,* 228 Kan. 613, 620 P.2d 805, 809 (1980) (depository bank's failure to deposit checks according to restrictive indorsement constitutes lack of ordinary care); *Kelly v. Central Bank and Trust Co.,* 794 P.2d 1037, 1042–43 (Colo.Ct.App.1989) (bank failed to act in accordance with reasonable commercial standards by depositing checks inscribed "For Deposit Only" to an account other than payee's). *See also Mid–Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co.,* 658 F.Supp. 140, 143–44 (D.Md.1987). Boatmen's payment of check proceeds to a lock box other than the named payee's contradicts section 400.3–117(c) and constitutes lack of ordinary care as a matter of law.

■ Second, Missouri courts strictly construe indemnity contracts. *Uelk v. Directory Distrib. Ass'n., Inc.,* 803 S.W.2d 632, 635 (Mo.Ct.App.1991). Clear language is required to show that a contract of indemnity was intended to cover conditions or operations under the control of the party indemnified. *Parks v. Union Carbide Corp.,* 602 S.W.2d 188, 190 (Mo.1980).

■ The language in the agreements before us lacks the requisite clarity needed to indemnify Boatmen's for its misdirection of the funds. Nothing in the provisions expressly requires Continental to indemnify Boatmen's if Boatmen's erroneously relied on an incorrect LBID provided by a Continental customer. Moreover, the indemnification language could be interpreted as requiring Continental to indemnify and hold Boatmen's harmless from claims of third parties because the language suggests that Boatmen's would be indemnified from any losses Boatmen's sustained. Further, although Continental asked Boatmen's to authorize the Command to place Continental's LBID number on its checks, Boatmen's forwarded the authorizing letter to the Command and never explained to Continental or the Command that the

checks would be exclusively processed according to the identification number. Indeed, Boatmen's explained in its "Description of Services" that "funds are wire transferred according to instructions provided by the customer." Under these circumstances, we are persuaded that the indemnification clauses do not protect Boatmen's from liability.

Finally, Boatmen's argues that evidence of negligence by Continental and its agent, the Command, present genuine issues of material fact precluding the entry of summary judgment. Boatmen's alleges that Continental was negligent because: (1) its agent, the Command, placed the incorrect LBID on the check; (2) Continental submitted an invoice which did not include any LBID; (3) Continental failed to review and reconcile statements provided to it to discover that it had not received the check proceeds;[5] and (4) Continental waited five months before discovering and reporting to Boatmen's that it had not received the check proceeds.

We reject these arguments. First, we are unpersuaded that the Command qualified as Continental's agent. An "essential element of an agency relationship is the principal's right to control the conduct of the agent with respect to matters entrusted to him." *Martin Coin Co. v. King*, 665 S.W.2d 939, 942 (Mo.1984) (en banc). The record contains no evidence that Continental had a right to control any aspect of the Command. It is true that Continental authorized the Command to place Continental's LBID on the government checks. Continental asked the Command to do so, however, at Boatmen's request, and Boatmen's never informed Continental what would happen if the Command placed the wrong number on the check. Similarly, Continental's failure to place the LBID on its invoices to the Command is not negligence. Boatmen's sent a copy of a letter from Continental dated April 1, 1986, to the Command reflecting the lock box number for Continental, and there is no evidence in the record that Continental had a

duty to include the identification number in each of its invoices to the Command. As far as Continental's alleged failure to review Boatmen's statements, the statements did not show that Boatmen's had received the Command check. Thus, the only way Continental could have discovered that it had not been paid the check proceeds is if the Command notified Continental. Boatmen's does not argue, nor is there any evidence, that Continental knew that the Command made the August payment.

We affirm the judgment of the district court.

FAGG, Circuit Judge, dissenting.

Although I agree with much of Judge John R. Gibson's excellent opinion for the court, I do not agree that "[t]he language in the agreements before us lacks the requisite clarity needed to indemnify Boatmen's for its misdirection of the funds." *Ante* at 1259. Instead, I believe the agreements' provisions require "Continental to indemnify Boatmen's [when] Boatmen's erroneously relied on an incorrect LBID provided by a Continental customer." *Id.* Thus, unless Boatmen's has failed to exercise ordinary care, the indemnification clauses protect Boatmen's from liability. *See* Mo.Ann.Stat. § 400.4–103(1) (Vernon 1965) (bank may not disclaim responsibility for failure to exercise ordinary care). Contrary to the court's view, I do not believe the cases the court relies on support the conclusion that in the circumstances of this case "Boatmen's payment of check proceeds to a lock box other than [Continental's] ... constitutes lack of ordinary care as a matter of law." *Ante* at 1259. In my view, the reasonableness of Boatmen's actions raises a factual dispute that precludes summary judgment. I would reverse the district court's grant of summary judgment for Continental and remand for trial.

---

5. The Wire Transfer of Funds Agreement provided that Continental agreed to:
 review and reconcile its statements of account and to report to Bank in writing within sixty (60) days after the statement date any discrepancies or objections of any other type or nature between Customer's records of such transactions and the statement furnished by Bank. Customer expressly agrees that the failure to do so shall relieve Bank of any liability with respect to such discrepancies or objections.