[Civ. No. 25564. First Dist., Div. Four. Sept. 29, 1969.]

ROBERT O. WRIGHT, Plaintiff and Appellant, v. BANK OF CALIFORNIA, Defendant and Respondent.

Robert O. Wright, in pro. per., and Robert A. Mouser for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Noble K. Gregory, Thomas E. Haven and Marvin D. Heileson for Defendant and Respondent.

CHRISTIAN, J.—Plaintiff Robert O. Wright appeals from a judgment which dismissed his complaint as against respondent Bank of California, one of numerous defendants against whom Wright brought suit to recover funds allegedly diverted wrongfully from a checking account. The dismissal followed upon an order which sustained respondent bank's general demurrer without leave to amend.

The following narrative summarizes the allegations of the complaint bearing on the asserted liability of respondent bank.

Appellant and a joint venturer in a business enterprise, defendant Sheldon Feinberg, maintained a checking account with respondent Bank of California; only checks bearing the

signatures of both joint venturers were to be honored by respondent. On March 1, 1966, defendant Feinberg and defendant Campanile represented to appellant that it was necessary to pay $24,500 to defendant March Construction Company (March) in connection with a contract between March and the joint venturers. Upon that representation appellant signed a $24,500 check, drawn on the joint account and payable to March. The representation was fraudulent; that amount represented only partial payment on the contract, and Feinberg and Campanile knew that March would not accept partial payment. March subsequently refused to accept the check.

Falsely representing himself to be March's agent, Campanile forged an application for a cashier's check and presented that application and the original check (from the joint venturers to March) to respondent Bank of California. Without inquiring whether Campanile was truly March's agent, respondent accepted the application and the unindorsed check and issued its cashier's check (payable to March) in payment of the original check. The $24,500 was then charged by respondent against the joint venture account.

The cashier's check was offered to March by Campanile and rejected. However, defendant Kruley, an agent of March, was persuaded to indorse the check in the following manner, supposedly in order to enable appellant and Feinberg to redeposit the check in their account: "Proposal to start construction not acceptable. Work to start upon the release of SBA funds. March Construction Co., Inc., P. O. 223, San Lorenzo, California, M. O. Kruley, Sec. Treas." Feinberg presented the cashier's check, thus indorsed, to defendant Hayward National Bank (not to respondent bank); after inquiring of defendant March regarding the indorsement, the Hayward bank issued its own cashier's check in the amount of $24,500 payable to Feinberg; this cashier's check was then negotiated by Feinberg and the proceeds diverted to his own use.

The complaint attempts to state four causes of action against respondent bank for negligence, conversion, a common count for money had and received, and declaratory relief. Respondent's general demurrer was sustained without leave to amend as to all of these counts. Appellant contends that a cause of action was stated and that in any event it was an abuse of discretion to sustain the demurrer without leave to amend.

 Out of the debtor-creditor relationship that exists between a bank and its depositor arises an implied contract that the bank will pay money out of the depositor's account only in compliance with the depositor's instructions; that is, a bank may honor only those checks bearing the depositor's valid signature (*Basch* v. *Bank of America* (1943) 22 Cal.2d 316, 321 [139 P.2d 1]). A bank is charged with knowledge of its depositor's signature (*Basch* v. *Bank of America, supra*). Appellant contends that through negligence respondent violated its duty to appellant, as established in the above case, by (1) accepting the original check (from the joint venture to March Construction Company) without an indorsement thereon and (2) accepting the application for a cashier's check without determining the identity or authority of the applicant.

Conceding that its duties are as outlined above, respondent bank contends that it is protected from liability by reason of acting in accordance with the Commercial Code provisions concerning negotiation and payment of checks.

Respondent correctly points out that taking the original unindorsed check in exchange for issuance of its own cashier's check was not a "negotiation" of the depositor's check but only a "payment." Indorsement of a depositor's check is necessary for the negotiation thereof (Com. Code, § 3202; 11 Am.Jur.2d, Bills and Notes, § 350). But presentation of a check to the drawee (respondent in this case) for payment is not a negotiation of the check, for the drawee is not a holder in due course. Presentation of an un-negotiated check calls merely for payment of the check (*Wells Fargo Bank etc. Co.* v. *Bank of Italy* (1931) 214 Cal. 156, 164 [4 P.2d 78]; 8 Cal.Jur.2d, Bills and Notes, § 130). Here payment was made, at the request of the presenter of the check, not in cash but in the form of a cashier's check, which represented the bank's own promise to pay. The cashier's check was in the same amount, and drawn in favor of the same payee, as the original check. Thus far, then, delivery of the cashier's check might appear to constitute merely a form of "payment" of the original check.

 Respondent's second major contention is that issuance of its cashier's check in exchange for the original check could not result in any liability to appellant because the payee of the original check was not intended (by Feinberg) to have any interest in that check, i.e., that March was a fictitious payee. Under former section 3090 of the Civil Code, a negotiable instrument payable to the order of a fictitious

payee (one not intended to have any interest in the instrument) was payable to the bearer (see *Security-First Nat. Bank* v. *Bank of America* (1943) 22 Cal.2d 154, 157 [137 P.2d 452]; *Goodyear Tire & Rubber Co.* v. *Wells Fargo Bank etc. Co.* (1934) 1 Cal.App.2d 694, 700 [37 P.2d 483]). Because no indorsement of an instrument payable to the bearer is required, a drawee was not liable to the depositor for payment of such an instrument without obtaining an indorsement.

This rule has been changed by the enactment of the Uniform Commercial Code in California. Section 3405 of the Commercial Code provides as follows:

"(1) An indorsement by any person in the name of a named payee is effective if

". . . . . . . . . . . .

"(b) A person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

"(c) An agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest." It is thus no longer true that an instrument payable to a fictitious payee is bearer paper; but an indorsement by anyone using the payee's name will be effective (see Cal. Code Comment 2 to § 3405 of the Com. Code). The present complaint alleges that defendant Feinberg did not intend March Construction Company to have an interest in the check; therefore, section 3405 might appear applicable. Section 3405 would apply despite the fact that appellant—one of the makers of the check—did not share the intention that March Construction Company be merely a "fictitious payee." (*Goodyear Tire & Rubber Co.* v. *Wells Fargo Bank etc. Co., supra,* 1 Cal.App.2d 694, 707-710). Commercial Code section 3405 continues in effect the *Goodyear Tire & Rubber Co.* rule regarding divergent intent of joint makers; the rule places the loss upon the drawer in all cases where one cosigner signs the check in question upon the recommendation of another (Com. Code, § 3405, subd. (1)(c); Uniform Com. Code, Comment 2.f, to § 3405; Comment (1961) Wis.L.Rev. 514, 516-517).

Can section 3405 have any effect where there was *no* indorsement of the original check? The section merely provides that "An indorsement by any person in the name of a named payee" is effective, if a fictitious payee is involved. But an indorsement is generally required on all negotiable instruments except those payable to the bearer (Com. Code, § 3202:

7 Cal.Jur.2d 607; 11 Am.Jur.2d, Bills and Notes, § 350). There was no indorsement in the present case unless the signature upon the application for a cashier's check might be construed as such; however, that signature was ineffective because it was not upon the instrument itself or a paper attached thereto. (Com. Code, § 3202, subd. (2); *Lopez* v. *Puzina* (1966) 239 Cal.App.2d 708 [49 Cal.Rptr. 122, 19 A.L.R.3d 1291].)

Respondent contends that the surrender of the check for payment to the drawee should be accepted as the equivalent of an indorsement under the terms of section 3405. The theory is that section 3405 should not be construed so as to reduce the scope of the fictitious payee doctrine (see Uniform Com. Code Comment No. 4 to § 3405). No indorsement at all was necessary under the former fictitious payee rule (former § 3090 of the Civ. Code); therefore, respondent argues, none should be necessary under section 3405. It is true that the comments both to the Uniform Commercial Code and to the California Commercial Code indicate that the new section is intended either to "continue" or to "expand" the coverage of the fictitious payee doctrine and thus continue to shift the loss from the drawee bank to the employer of a dishonest co-signer of a check.[1] But the statute explicitly requires *some* indorsement in order to exempt the drawee bank from liability on a check payable to a fictitious payee. The plain language of the statute cannot be varied by reference to the comments. We conclude that section 3405 does not insulate respondent for liability for negligence.

Section 3505[2] of the Commercial Code provides that the drawee to whom an instrument is presented for payment *may*

---

[1]But see California Code Comment 2 to section 3405: ". . . However, a chain of indorsements which purports to be regular is necessary although any person can effectively indorse in the name of the payee." See also (1962) 37 State Bar J., at pp. 158-159: "To protect the bank a regular chain of indorsements would be required, but an indorsement by any person of the payee's name would be enough."

[2]Section 3505.

"(1) The party to whom presentment is made may without dishonor require

(a) Exhibition of the instrument; and

(b) Reasonable identification of the person making presentment and evidence of his authority to make it if made for another; and

(c) That the instrument be produced for acceptance or payment at a place specified in it, or if there be none at any place reasonable in the circumstances; and

(d) A signed receipt on the instrument for any partial or full payment and its surrender upon full payment.

(2) Failure to comply with any such requirement invalidates the presentment but the person presenting has a reasonable time in which to

require identification and evidence of the presentor's authority and a signed receipt for partial or full payment. Respondent bank did not make use of this power. But section 3505 does not purport to establish any duty on the part of the bank; the specified precautions are merely made available to the drawee without danger that dishonor of the instrument will be found to have occurred.

We have seen that the Commercial Code provisions do not either establish or negate respondent bank's liability. ■ The question remains therefore, whether issuance of a cashier's check in place of the original check, without an indorsement and without determining the authority of the person signing the application for a cashier's check, could in the circumstances alleged constitute negligence. That is to say, could the facts pleaded possibly support a determination that loss to appellant was proximately caused by lack of due care on the part of respondent bank in dealing with appellant's account and funds? Circumstances are alleged, pointing in the direction of negligence. The amount of the check was substantial. It might be a suspicious circumstance for a self-identified, purported agent of a corporate payee to come into the drawee bank with such a check to request that it be converted to a cashier's check. It was within the power of respondent bank to make prudent inquiry without being held to have dishonored the check (Com. Code, § 3505). Issuance of the cashier's check in place of the original check not only had the effect of assuring any subsequent holder that the instrument was supported by funds; it also resulted in the amount of the check being immediately charged against the maker's account, preventing the maker from stopping payment. A trier of fact might conclude that, under the unusual circumstances alleged here, such a significant alteration of the maker's position called for respondent bank to inquire of the depositors before proceeding.

It may well be difficult for appellant to show that his loss was proximately caused by the issuance of the cashier's check; perhaps Feinberg and his confederates would have been able to succeed as well in converting the original check to cash. But it is not impossible that Campanile's possession of a cashier's check induced Kruely to put on the check the writing, construed by the Hayward bank as an indorsement, which enabled Feinberg to procure its negotiation.

comply and the time for acceptance or payment runs from the time of compliance.''

We conclude, therefore, that the second count of the complaint does state a cause of action against respondent Bank of California. The ninth, tenth and fifteenth counts, which also attempt to state causes of action against respondent bank, do not allege additional facts and need not be considered.

The judgment is reversed with directions to overrule the general demurrer as to the second cause of action.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied October 23, 1969.