169 N.J. Super. 488 (1979)
404 A.2d 1288
KRAFTSMAN CONTAINER CORPORATION, PLAINTIFF,
v.
UNITED COUNTIES TRUST COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 19, 1979.
*490 Mr. Richard V. Wilde for plaintiff (Messrs. Romano, Hehl, Romankow & Wilde, attorneys).
Mr. Jay Scott MacNeill for defendant (Messrs. McDonough, Murray & Korn, attorneys).
*491 DREIER, J.S.C.
Plaintiff Kraftsman Container Corporation (customer) brought this breach of contract action against United Counties Trust Company (bank), alleging that the bank was negligent in cashing checks drawn on the customer's checking account at the bank. Defendant bank has moved for summary judgment based upon provisions of the Uniform Commercial Code (U.C.C.). The pivotal issue is one of first impression in New Jersey.
The facts are uncontroverted. Plaintiff maintained a checking account with defendant bank. The customer's treasurer, who also acted as bookkeeper, was authorized to draw and sign checks on behalf of the customer. Over a four-year period ending in December, 1975, the treasurer drew and signed over 100 checks payable both to fictitious parties and to actual creditors of the customer. He retained the checks and then cashed them at the bank, converting the funds to his own use. The checks ranged in amounts from $200 to $3,000, with the sum of the embezzled funds totaling $46,714.28. In most instances the treasurer indorsed the checks, usually illegibly, although the bank's tellers cashed some of the checks without any indorsement. It was the normal procedure of the bank to require that any party cashing a check indorse it, but the tellers did not obtain the treasurer's personal indorsement, nor did they make any inquiry regarding any of the illegible or missing payee indorsements. The customer had employed accountants throughout the four-year period to review its cancelled checks and the customer's monthly bank statements, but the scheme remained undetected for four years.
The bank claims by way of the present motion that it is shielded from liability by the terms of the U.C.C., specifically N.J.S.A. 12A:3-405(1)(b). Plaintiff responds that the bank's failure to exercise reasonable care in guarding against improper payment of the checks renders the bank liable for the amount embezzled. The application of a "reasonable care" negligence standard to a bank in a *492 fictitious-payee indorsement case is the novel proposition urged upon this court.
Articles 3 and 4 of the U.C.C., N.J.S.A. 12A:3-101 et seq. and 4-101 et seq. set forth the duties, rights and liabilities of banks and their customers concerning commercial paper. Under § 4-401(1)[1] a bank may charge a customer's account only for checks which were properly payable by the bank. Wrongful payment by the bank renders it liable to the customer, who must be reimbursed. This broadly defined duty of the bank is modified by other provisions which define the obligations of the customer. Section 3-406 precludes a customer from claiming wrongful payment when its own negligence has substantially contributed to the making of a material alteration or an unauthorized signature. The customer is required by § 4-406 (1) to (3) to be reasonably careful and prompt in examining the periodic bank statements and cancelled checks to discover and report alterations or the unauthorized use of its signature. Failure of the customer to discharge these duties may relieve the bank from liability under § 4-406(2) and (3).
The customer acknowledges that its treasurer was authorized to draw and sign its checks. Therefore none of the drawer's signatures were unauthorized, and plaintiff cannot have been negligent in failing to discover an unauthorized signature. Section 3-406 is thus inapplicable, as are the provisions of § 4-406(1) to (3) which impose upon the customer the duty of discovering its own unauthorized signatures or alterations. The dispute here is over the relative duties of the parties regarding indorsements. The only reference to indorsements in § 4-406 is found in subsection (4), where the time limitation for "asserting against the bank such unauthorized signature or indorsement" is set at three years from the availability to the customer of *493 the relevant bank statement and checks, "Without regard to care or lack of care of either the customer or the bank."[2]
Liability for payment on a forged indorsement is treated by the U.C.C. as a separate concept. The basic rule is that a bank which pays a check on a forged indorsement is liable, since a forged indorsement is wholly inoperative as the signature of the actual payee (§ 3-404), and is thus not properly payable under § 4-401. A check validly issued but wrongfully paid by the bank on a forged indorsement entitles the customer to a credit. The commitment of the U.C.C. to finality, Perini Corp. v. First Nat'l Bank of Habersham Cty., Ga., 553 F.2d 398, 21 U.P.P. Rep. 929 (5 Cir.1977), reh. den. 557 F.2d 823 (5 Cir.1977), is manifested by allocating the forgery loss to the bank.
The risk of loss may shift. Section 3-405 deems effective an indorsement by anyone in the name of a fictitious payee.[3] The treasurer in the instant case, drawing and signing checks on behalf of the customer, plainly had the *494 requisite intent under the statute. Twellman v. Lindell Trust Co. v. Continental Bank & Trust Co., 534 S.W.2d 83, 19 U.C.C. Rep. 604 (Mo. Ct. App. 1976).
There is no qualifying language in § 3-405 setting forth a standard of care to be applied to either the bank or its customer. This is in contrast to § 3-406, which would specifically penalize the customer for negligence substantially contributing to a material alteration or an unauthorized signature. In that situation a bank is required to pay the item "in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business" under § 3-406, but the preclusion of a customer from asserting the unauthorized signature or material alteration under § 4-406(2) is inapplicable if the customer establishes the bank's "lack of ordinary care" under § 4-406(3). The conspicuous absence in § 3-405 of either an "ordinary care" or "good faith" standard signals that a test for a bank's liability for payment on improper indorsements must be found elsewhere. Prudential Ins. Co. of America v. Marine Nat'l Exchange Bank of Milwaukee, 371 F. Supp. 1002, 14 U.C.C. Rep. 462 (E.D.Wis. 1974); Hicks-Costarino Co., Inc. v. Pinto, N.Y.L.J., Feb. 23, 1978, 23 U.C.C. Rep. 680 (Sup.Ct. 1978). Plaintiff urges that a standard of simple negligence applies. Defendant asserts that it is shielded from liability by § 3-405. There are no New Jersey cases construing the standard to be applied.[4]
Read independently of other U.C.C. provisions, § 3-405 apparently shifts the fictitious-payee indorsement loss to the customer without regard to any lack of care on the part of the bank. Wright v. Bank of California, Nat'l Ass'n, 276 Cal. App.2d 485, 81 Cal. Rptr. 11, 6 U.C.C. Rep. *495 1165 (D.Ct.App. 1969). Yet the bank may not pay over such an indorsement with impunity. Section 1-203 of the U.C.C. imposes on every contract subject to its provisions an obligation of good faith which, under § 1-102(3), may not be disclaimed by agreement. Although § 4-103(1) specifies that a bank may not disclaim responsibility for its own lack of good faith or failure to exercise ordinary care, § 4-401(2) allows the bank to charge its customer's account only when payment has been in good faith. "Good faith" itself is defined in § 1-201(19) as "honesty in fact in the conduct or transaction concerned."
While the good faith requirement is invariable throughout the U.C.C. by way of § 1-102(3), the more rigorous and objective negligence standard of ordinary care does not have such general applicability. Simple negligence on the part of a bank should not, and has been found not to affect the operation of § 3-405; only bad faith should bar the bank from invoking § 3-405 to defeat the customer's claim. See, e.g., Bd. of Higher Ed. of the City of N.Y. v. Bankers Trust Co., N.Y.L.J. May 13, 1976, 19 U.C.C. Rep. 599 (Sup.Ct. 1976) (bank's summary judgment motion in a similar case denied because of bona fide factual issues regarding bank's bad faith); McConnico v. Third Nat'l Bank of Nashville, 499 S.W.2d 874, 13 U.C.C. Rep. 641 (Tenn. Sup.Ct. 1973) (§ 3-302 "holder in due course" standards of good faith and notice applied where bank deviated from accepted banking practices and checks contained irregularities); Hicks-Costarino Co., Inc. v. Pinto, supra (court looked for gross negligence or wilful ignorance as evidence of bad faith but found none); Prudential Ins. Co. of America v. Marine Nat'l Exchange Bank of Milwaukee, supra (ordinary care argument rejected.)
These authorities are in accord with U.C.C. Comment No. 6 to § 4-406:
Nothing in this section is intended to affect any decision holding that a customer who has notice of something wrong with an indorsement *496 must exercise reasonable care to investigate and to notify the bank. It should be noted that under the rules relating to imposters and signatures in the name of the payee (Section 3-405) certain forged indorsements on which the bank has paid the item in good faith may be treated as effective notwithstanding such discovery and notice. If the alteration or forgery results from the drawer's negligence the drawee who pays in good faith is also protected. Section 3-406. [Emphasis supplied]
The bank must fulfill at least a threshold requirement to invoke the protection of § 3-405. The provision requires "[a]n indorsement by any person in the name of a named payee." The checks before the court in Wright v. Bank of California, Nat'l Ass'n, supra, had no indorsements. The court acknowledged that § 3-405 is generally meant to shift the loss on a fictitious payee indorsement from the drawee bank to the employer of a dishonest malefactor, but it also noted that
* * * the statute explicitly requires some indorsement in order to exempt the drawee bank from liability on a check payable to a fictitious payee * * *. We conclude that section 3[-]405 does not insulate respondent for [sic] liability for negligence. [81 Cal. Rptr. at 14, 6 U.C.C. Rep. at 1170]
The suggested precautions set out in § 3-405, such as a bank requirement that a presenting party provide reasonable identification and authority to cash a check, are cited by the court. Id. 81 Cal. Rptr. 11, 6 U.C.C. Rep. at 1170.
In Travco Corp. v. Citizens Federal S. & L. Ass'n, 42 Mich. App. 291, 201 N.W.2d 675, 11 U.C.C. Rep. 799 (Ct. App. 1972), the court was even more specific in requiring indorsements in the name of the named payee. There the customer's treasurer drew and signed checks payable to fictitious payees. The indorsements did not match the payees' names. The court rejected application of § 3-405 because the checks were not indorsed in the name of a payee, and judgment was entered against the bank because it had paid over an inadequate indorsement. A similar finding was made in Twellman v. Lindell Trust Co. v. Continental Bank & Trust *497 Co., supra, where reliance on § 3-405(1) (c) was rejected because the forged indorsement did not precisely match the name of the payee.
Defendant bank seeks here to invoke § 3-405(1)(b) to defeat plaintiff customer's claim. The bank must have at the very least required indorsements in the name of the named payee. § 3-405; Aravco Corp. v. Citizens Federal S. & L. Ass'n, Twellman v. Lindell Trust Co. v. Continental Bank & Trust Co., and Wright v. Bank of California, Nat'l Ass'n, all supra. This court construes § 3-405 as requiring an indorsement substantially identical to the name of the named payee.
Those checks cashed by defendant bank without any indorsement must be excluded from § 3-405 protection. Summary judgment is therefore denied the bank regarding the unindorsed checks. Summary judgment is also denied as to those checks exhibiting illegible indorsements; the illegibility of the indorsements raises a question of fact as to whether payment by the bank constituted a lack of "good faith" on the part of the bank. § 3-405; Travco Corp. v. Citizens Federal S. & L. Ass'n, supra; Twellman v. Lindell Trust Co. v. Continental Bank & Trust Co., supra; R. 4:46-2; Judson v. Peoples Bank & Trust Co., 17 N.J. 67 (1954).
Finally, plaintiff has raised a material question of fact as to the propriety of the bank's conduct over the entire four-year period. The transactions are to be viewed as a whole, since bad faith may be evidenced by a consistent failure by the bank to monitor and investigate a series of irregular transactions. Bd. of Higher Ed. of the City of N.Y. v. Bankers Trust Co., supra. Effective indorsements do not relieve the bank from liability if there is proof of a course of dealing so irregular in nature that the bank is shown to have violated its own policies and to have failed to act according to the standard of honesty-in-fact. § 1-203; § 1-201 (19); McConnico v. Third Nat'l Bank of Nashville, supra. Although there is no evidence that any bank employees were acting as confederates, not once was the treasurer asked to *498 indorse the checks himself; nor was he ever questioned regarding the illegible or missing payee indorsements.
Viewing all of the evidence in the light most favorable to the customer, this court cannot say that as a matter of law defendant bank acted in good faith. R. 4:46-2; Judson v. Peoples Bank & Trust Co., supra.[5] This matter, therefore, is also reserved for trial.
NOTES
[1] All U.C.C. citations are to N.J.S.A., Title 12A.
[2] Plaintiff customer concedes that 12 of the checks which are the subject of its claim, as well as the bank statements covering those checks, were received by plaintiff more than three years before it reported the unauthorized indorsements. Plaintiff is precluded by § 4-406(4) from asserting any unauthorized indorsement on these items. See Bd. of Higher Ed. of the City of N.Y. v. Bankers Trust Co., 86 Misc.2d 560, 383 N.Y.S.2d 508, 19 U.C.C. Rep. 599 (Sup. Ct. 1976). However, plaintiff's claim here is technically not an assertion of either the lack of indorsement or an unauthorized indorsement, since the indorsements were effective under § 3-405. Rather, plaintiff asserts breach of contract based upon the bank's failure to act reasonably to protect its customers' interests. Therefore the claims on these older checks are not barred by § 4-406(4), but are subject to the six-year statute of limitation, N.J.S.A. 2A:14-1. Summary judgment on those checks must therefore be denied, and these items included in the total claim, subject to the standards set forth infra.
[3] This provision expands the common law fictitious-payee rule to apply also to imposters and real parties who are intended by the maker or one acting on the maker's behalf to have no interest in the item. References in this opinion to the "fictitious-payee" rule are intended to cite these broader § 3-405 principles.
[4] Cf. Gast v. American Casualty Co. of Reading, Pa., 99 N.J. Super. 538 (App. Div. 1968) and Salsman v. Nat'l Community Bank of Rutherford, 102 N.J. Super. 482 (Law Div. 1968), applying "substantial factor" and "reasonableness" tests under § 3-406 in cases where payees are alleging forged payee indorsements.
[5] The court is in no way overlooking the evidence that plaintiff itself may have been negligent. The customer is not excused from its own duties by entrusting performance of those duties to a dishonest agent. Faber v. Edgewater Nat'l Bank of Edgewater, 101 N.J. Super. 354 (Law Div. 1968).

Although the issue was not raised by the parties here, it must be left to the trial court to determine whether the bank may be estopped from alleging the customer's negligence if the bank is found to have violated the higher U.C.C. good faith requirement, or whether to compare the fault of the parties if the conduct of the customer is also determined to have fallen to the level of "bad faith." Cf. Draney v. Bachman, 138 N.J. Super. 503 (Law Div. 1976).