**WESTERN CASUALTY & SURETY COMPANY, Plaintiff-Appellant,**

v.

**CITIZENS BANK OF LAS CRUCES and Bank of New Mexico, Defendants-Appellees.**

No. 80–1627.

United States Court of Appeals, Tenth Circuit.

April 26, 1982.

Leonard J. Delayo, Jr., Leonard Delayo & Associates, Albuquerque, N. M. (with Sigrid E. Olson, Albuquerque, N. M., on the brief), for appellant.

Randal W. Roberts, Albuquerque, N. M. (LeRoi Farlow of Farlow & Simone, Albuquerque, N. M., on the brief), for appellee Citizens Bank of Las Cruces.

Robert H. Clark, of Keleher & McLeod, P. A., Albuquerque, N. M. (with Peter H. Johnstone, Albuquerque, N. M., on the brief), for appellee Bank of New Mexico.

Before HOLLOWAY, McWILLIAMS and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Western Casualty and Surety Co. instituted this action in diversity against the Citizens Bank of Las Cruces and the Bank of New Mexico, alleging that these banks failed to comply with reasonable commercial banking practices and standards in the handling of public monies by accepting for payment a fraudulently procured and improperly indorsed warrant of the state of New Mexico in the amount of $395,000.00. The warrant in question was issued to a fictitious entity, the Greater Mesilla Valley Sanitation District, which had been created by two state employees to defraud the state of money. The warrant was presented to, accepted and processed by Citizens Bank, and forwarded to the Bank of New Mexico for payment from state funds. The Bank of New Mexico, acting in its capacity as fiscal agent for the state, honored the warrant. Western Casualty was subrogated to the claims of the state by virtue of its payment as surety on an employee blanket bond.

On defendants' motion for summary judgment, the district court granted judgment in favor of the defendant banks on all of Western Casualty's claims. Western Casualty argues on appeal that the district court improperly applied the statutory defenses of § 3–405 of the Uniform Commercial Code (UCC), N.M.Stat.Ann. § 55–3–405 (1978) to protect both banks from liability. Appellant further argues that summary judgment was improper because the facts and allegations contained in the record raise questions of fact regarding the existence of the banks' duty to the state and breach thereof by their acceptance of and payment on a forged and fraudulent warrant.

■ As part of an attempt to establish uniform rules governing the relationships between banks and their customers, the UCC allocates the losses caused by forged signatures on negotiable instruments based on the relative responsibilities of the parties to a transaction. As a general rule, "forged indorsements are ineffective to pass title or

to authorize a drawee to pay." J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* § 16–8, at 631 (2d ed. 1980). *See* U.C.C. § 3–417, Comment 3. If a drawee pays a check on which a necessary indorsement is forged, the drawer can usually require the drawee bank to recredit the drawer's account. The item is not "properly payable," U.C.C. § 4–401, because "[a]ny unauthorized signature is wholly inoperative as that of the person whose name is signed." U.C.C. § 3–404. The loss on an instrument containing a forged indorsement is then shifted to previous indorsers by way of an action for breach of warranty of good title. U.C.C. §§ 3–417 & 4–207. Ultimately the loss is generally borne by the person who forged the indorsement or the party who took the instrument from the forger. *Perini Corp. v. First National Bank*, 553 F.2d 398, 403–04 (5th Cir. 1977). Therefore, as a general rule, the drawer can avoid liability on an instrument by showing an unauthorized indorsement. *Id.* at 404.

■ Section 3–405 operates as an exception to this general rule. In certain factual situations, this section treats anyone's indorsement in the name of the payee as effective to pass title to the instrument, leaving the drawer liable on the instrument despite the forged indorsement. This section provides in part:

(1) An indorsement by any person in the name of a named payee is effective if:

(a) an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

U.C.C. § 3–405(1). The circumstances described in § 3–405(1)(c) directly apply in this case.[1] An "employee" of the "maker or

---

1. Although this section is often referred to as the "padded payroll" section, it covers situations "in which an employee starts the wheels of normal business procedure in motion to produce a check for a non-authorized transaction."

drawer," the State of New Mexico, supplied the State with the name of a "payee," the fictitious sanitation district, "intending the latter to have no ... interest" in the instrument issued. The rationale for placing the loss on the drawer under the circumstances delineated in § 3–405(1)(c) is that

> the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.

U.C.C. § 3–405, Comment 4.

Western Casualty argues that the banks are not entitled to the protection of § 3–405 because the indorsement on the warrant was not "in the name of a named payee" as required by that section. Appellant bases this argument on the fact that the warrant was payable to the *Grater* Mesilla Valley Sanitation District, while the indorsement was in the name *Greater* Mesilla Valley Sanitation District.

The language of § 3–405 does not specify whether the payee's name and the indorsement must be identical in every respect. Generally, in cases not covered by § 3–405, an indorsement need not match the payee's name exactly. *See* U.C.C. § 1–201(39) & Comment 39, § 3–401(2) & Comment 2. When a name is misspelled on a check, an indorsement in the incorrect or correct name is sufficient, although the bank may require an indorsement in both the correct and incorrect names. U.C.C. § 3–203 &

New Amsterdam Cas. Co. v. First Pa. Banking & Trust Co., 451 F.2d 892, 897 (3d Cir. 1971).

**2.** Of course, an indorsement in a name completely different from that of the payee, such as an indorsement of an entity different from the payee, or an indorsement in a personal capacity on a check payable to a business entity, could preclude a bank from invoking the protection of this section. *See, e.g., Perini Corp. v. First Nat'l Bank*, 553 F.2d 398, 415 (5th Cir. 1977);

Comment 3. Under the general principles regarding misspelled payees' names and indorsements, the fact that the warrant was indorsed in the correctly spelled name was not sufficient to invalidate the indorsement.

It may be argued that the provision in § 3–405 requiring the indorsement to be "in the name of a named payee" impliedly abrogates this general rule, and requires that the payee's name and indorsement not vary in the slightest detail. The comments to that section, however, state that the instrument must bear "what purports to be a regular chain of indorsements." U.C.C. § 3–405, Comment 1. This indicates that the purpose of the indorsement requirement in § 3–405 is primarily "to ensure that the check presents a normal appearance" and that the person negotiating it can reasonably be identified as the intended payee. *See* Comment, *U.C.C. § 3–405: Of Impostors, Fictitious Payees, and Padded Payrolls*, 47 Fordham L.Rev. 1083, 1093 (1979). The difference in spelling between the named payee and the indorsement in this case in no way affects these functions.[2] In light of the stated purposes of § 3–405, we are not persuaded that this minor discrepancy in spelling is sufficient to upset the loss allocation system established by this section. We conclude, therefore, that the district court correctly held that "[t]he spelling difference relied on by plaintiff is not significant and does not overcome the protection of ... [§ 3–405]." Record, vol. 1, at 143.

Western Casualty contends that even if § 3–405 applies in this case, summary judgment was improper because factual questions concerning the banks' culpability in contributing to the loss remain to be resolved at trial. The propriety of summa-

*Twellman v. Lindell Trust Co.*, 534 S.W.2d 83, 92–93 (Mo.Ct.App.1976); *Travco Corp. v. Citizens Fed. Sav. & Loan Ass'n*, 42 Mich.App. 291, 292–93, 201 N.W.2d 675, 676 (1972); *Kraftsman Container Corp. v. United Counties Trust Co.*, 169 N.J.Super. 488, 497, 404 A.2d 1288, 1292 (1979) (proper standard is whether the indorsement is "substantially identical to the name of the named payee"). *But see Seattle-First Nat'l Bank v. Pacific Nat'l Bank*, 22 Wash. App. 46, 54–55, 587 P.2d 617, 622–23 (1978).

ry judgment depends upon whether the allocation of loss to the drawer in the factual situations described in § 3–405 is absolute or whether the loss can be reshifted to the bank upon a showing that it did not follow reasonable commercial practices. Section 3–405 does not explicitly impose a standard of care on banks that assert the section as a defense, and the New Mexico courts have not yet confronted this issue. Of course, the obligation of all parties to act in good faith is explicit in the Code's general provisions, U.C.C. § 1–203, and for the purposes of Articles Three and Four dealing with negotiable instruments, "good faith" is defined as "honesty in fact."[3] U.C.C. § 1–201(19). While it is clear that banks must observe this standard of good faith, whether they must also be free from negligence to invoke the protection of § 3–405 is unclear. Two other sections of the Code that deal with forged signatures specifically incorporate a standard of care for banks. Under § 3–406, a drawer who has substantially contributed to the making of an unauthorized signature may not assert the lack of authority against a bank "who pays the instrument in good faith and *in accordance with . . . reasonable commercial standards.*" (Emphasis added). Section 4–406, which requires a bank customer to timely examine his bank statements and notify the bank of unauthorized signatures, nevertheless allows recovery against the bank despite failure to do so if the customer "establishes *lack of ordinary care* on the part of the bank in paying the item(s)." (Emphasis added). Under these two sections, the negligent drawer can defeat the bank's defenses to a forgery by showing that the bank acted negligently. No similar qualifying language is incorporated in § 3–405.

Section 3–405 has been referred to as a "first cousin" to § 3–406 and § 4–406, "un-

der which, if both parties are negligent, the bank bears the loss." J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* § 16–8, at 638 (2d ed. 1980). In light of the similarities among these sections, White and Summers argue that under § 3–405, "even the negligent customer should be permitted to prove the payor-bank's negligence and, having so proven it, should be able to assert the forged indorsement." *Id.* at 638–39. However, as one court has noted, the "conspicuous . . . absence" in § 3–405 of a requirement that the bank exercise ordinary care just as easily leads to the conclusion that the drafters of the Code purposely intended that under the circumstances outlined in § 3–405 the drawer would be liable without regard to the bank's negligence. *Prudential Insurance Co. v. Marine National Exchange Bank*, 371 F.Supp. 1002, 1003 (E.D. Wis.1974).

It has also been argued that the drawer may proceed on a common law action for negligence in situations falling within § 3–405 by virtue of § 1–103. *See Sun 'n Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 696, 582 P.2d 920, 937, 148 Cal.Rptr. 329, 346 (1978); Comment, *The Effect of Bank Misconduct on the Operation of the Padded Payroll Preclusion of U.C.C. § 3–405*, 26 U.C.L.A.L.Rev. 147, 174–75 (1979). Section 1–103 provides that the Code is supplemented by general "principles of law and equity" unless "displaced by the particular provisions" of the Code. Section 3–405 does not explicitly displace the bank's obligation to act with reasonable care; it simply does not discuss the bank's standard of care. Like § 3–406 and § 4–406, § 3–405 alters the general principles governing the allocation of forgery losses. Because § 3–406 and § 4–406 explicitly shift the liability

---

3. Although Western Casualty alleged in its complaint that the banks acted in "bad faith," this allegation is not supported by any facts in the record, and was not seriously pressed on appeal. Western Casualty "cannot rest on mere allegations . . . but must, by affirmative response in affidavits or otherwise, set forth specific facts showing that there is a genuine issue for trial." *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980), *cert. denied*, 451

U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981). Western Casualty failed to meet this standard with respect to its allegation of bad faith. *Cf. Brighton, Inc. v. Colonial First Nat'l Bank*, 176 N.J.Super. 101, 120, 422 A.2d 433, 443 (1980), *aff'd*, 86 N.J. 259, 430 A.2d 902 (1981) (plaintiffs asserted facts that "bespeak[ ] more than negligence or recklessness but actual complicity between bank personnel and [the forger]").

for forgeries from negligent bank customers to negligent banks, the absence of such language in § 3–405 implicitly demonstrates, in our view, an intent to displace common law negligence actions.

The interpretation that negligence is irrelevant to a § 3–405 defense is supported by the policy of placing the loss on the party in the best position to prevent it. U.C.C. § 3–405, Comment 4. This policy is particularly applicable in cases under § 3–405(1)(c), because

> the wrongdoing is internal, [and] it is arguably within the drawer's ability to set up a system of controls and safeguards to prevent the embezzlement.... Although the bank might be expected to know or verify the signature of its drawer-customer, it is in no position to be a watchdog over the internal business procedures of its customer or to ascertain the validity of an indorsement.

Harbus, *The Great Pretender—A Look at the Imposter Provision of the Uniform Commercial Code*, 47 Cin.L.Rev. 385, 395 (1978). The interpretation of § 3–405 as an absolute loss allocation device is also more consistent with the recognition that this section was conceived as "a banker's provision intended to narrow the liability of banks and broaden the responsibility of their customers." *General Accident Fire & Life Assurance Corp. v. Citizens Fidelity Bank & Trust Co.*, 519 S.W.2d 817, 819 (Ky.Ct.App.1975).

We are not persuaded that the absence of language establishing a duty of care in § 3–405 was inadvertent, nor do we think a standard of care based on negligence can be implied consistent with the expressed purposes underlying that section. Therefore, we believe that the New Mexico courts would hold that the § 3–405 defense is absolute where the only allegation is one of negligence, so that a court need not consider allegations of negligence on the part of the bank in a factual situation falling within § 3–405(1)(c). The district court properly applied § 3–405 in granting summary judgment against Western Casualty on its claims that Citizens Bank of Las Cruces and the Bank of New Mexico acted negligently in accepting, processing, and

making payment on the fraudulently procured warrant. Accordingly, the order of the district court is AFFIRMED.