The **GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and The Guardian Insurance & Annuity Company, Inc., Plaintiffs,**

v.

**Mark WEISMAN, Chemical Bank of Delaware, Midlantic National Bank, Corestates Bank of Delaware, N.A., Merchants Bank, N.A., ABC Bank and John Does 1–10, Defendants.**

**The New England Mutual Life Insurance Company, Plaintiff,**

v.

**Midlantic Bank, N.A., Wachovia Bank of Georgia, John Doe Bank 1–10, and John Doe Individuals 1–10, Defendants.**

**Civil Action No. 96–1141 (MTB).**

United States District Court, D. New Jersey.

March 6, 1998.

---

Dennis John Drasco, Lum, Hoens, Conant & Danzis, Roseland, NJ, for Guardian Life Insurance Company of America, Guardian Ins. & Annuity Co., Inc., New England Mut. Life Ins. Co.

Gregg S. Sodini, Cuyler Burk, Parsippany Corporate Center, Parsippany, NJ, for Mark Weisman, Wachovia Bank of Georgia, PNC Bank, N.A., Chemical Bank of Delaware, Midlantic Nat. Bank, Corestates Bank of Delware, N.A., Merchants Bank, N.A., ABC Bank, John Does 1–10.

## OPINION

BARRY, District Judge.

█ This matter comes before the court upon the motion for summary judgment on behalf of defendants Midlantic National Bank (now known as PNC Bank, N.A.) ("Midlantic"),[1] Merchants Bank, N.A. (now known as First Union National Bank) ("Merchants"), and Wachovia Bank of Georgia ("Wachovia") and for partial summary judgment on behalf on defendants Chemical Bank of Delaware ("Chemical") and Corestates Bank of Delaware, N.A. ("Corestates"). The court has reviewed the submissions of the parties, or lack thereof, without oral argument pursuant

---

1. Midlantic refers to both Midlantic National Bank, as named in the lead action (the "Guardian Life" action), and Midlantic Bank, N.A., as named in the consolidated action (the "New England Mutual Life" action).

to Fed.R.Civ.P. 78. For the reasons discussed below, the motion will be granted in part and denied in part as to Midlantic and granted, as unopposed,[2] as to the remaining movants.

## I. *Factual Background*

The relevant facts of this matter, as described in the Final Pretrial Order,[3] are straightforward and relatively undisputed. From approximately the end of January, 1990 through June 25, 1995,[4] defendant Mark Weisman ("Weisman"), in his capacity as a field representative for plaintiff The Guardian Life Insurance Company of America, broker for plaintiff The Guardian Insurance & Annuity Company (collectively "The Guardian/GIAC"), and agent/broker for plaintiff The New England Mutual Life Insurance Company ("The New England"), engaged in a fraudulent scheme whereby he submitted numerous false requests to plaintiffs in the names of policyholders and annuity contract holders for loans or account withdrawals. *Final Pretrial Order* at § 3, ¶ 1. The Guardian/GIAC, without knowledge of the falsity of Weisman's requests, issued checks in the names of their policyholders and annuity contract holders representing life insurance policy loans or annuity contract withdrawals. *Id.* These checks were drawn on accounts maintained by The Guardian/GIAC with Chemical, Corestates, and Merchants. *Id.* Similarly, The New England, also without

knowledge of the falsity of Weisman's requests, issued checks in the names of its policyholders representing life insurance policy loans or dividend withdrawals. *Id.* These checks were drawn on an account maintained by The New England with Wachovia. *Id.* With few exceptions, plaintiffs sent the checks directly to Weisman's business address or to a false address provided by Weisman. *Id.* at ¶¶ 14(a), 21(a), 28(a), & 39(a). Weisman thereafter forged the indorsements of the named payees—sometimes legibly but most of the time illegibly[5]—and deposited the bulk of the checks into his Midlantic money market checking account. *Id.* at ¶¶ 14(b), 21(b), 28(b) & 39(b).

For approximately five and one-half years, this scheme went undetected by the depository bank (Midlantic), the various drawee banks (Chemical, Corestates, Merchants, and Wachovia), and the plaintiff employers/drawers. Since discovering the scheme, plaintiffs have asserted claims for conversion, improper payment, negligence, and fraud against Midlantic and their respective drawee banks. As discussed above, plaintiffs have not opposed the motion for summary judgment/partial summary judgment on behalf of the four drawee banks. The only remaining issue before this court, therefore, is whether summary judgment should be entered in favor of Midlantic.

**2.** Plaintiffs have opposed the motion only as it pertains to Midlantic (indeed, plaintiffs' counsel consented during a telephone conversation with the court's staff on February 17, 1998 to the relief sought by the other bank defendants). Accordingly, the court will grant the motion as it pertains to Chemical, Corestates, Merchants, and Wachovia. Additionally, because discovery, which has been completed, apparently has not yielded the identities of any new defendants, the claims against the fictitious defendants (i.e., ABC Bank, John Does 1–10, John Doe Bank 1–10, and John Doe Individuals 1–10) will also be dismissed. *See* Fed.R.Civ.P. 21; *Scheetz v. Morning Call, Inc.,* 130 F.R.D. 34, 37 (E.D.Pa.1990), *aff'd,* 946 F.2d 202 (3d Cir.1991) ("Fictitious parties must eventually be dismissed, if discovery yields no identities") (citing *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir.1980); *Saffron v. Wilson,* 70 F.R.D. 51, 56 (D.D.C.1975)).

**3.** The Final Pretrial Order is annexed to the *Certification of Gregg S. Sodini* at Exhibit A.

**4.** Although each side depicts somewhat differently the time frame of the fraudulent scheme, the Final Pretrial Order appears to indicate that the scheme commenced shortly before January 26, 1990, the date of the first forged check (which was drawn on Wachovia), and concluded at or around June 28, 1995, the date of the final illicit check (which was drawn on Corestates). *Final Pretrial Order,* at § 3, ¶¶ 20 & 38. In any event, the discrepancy in the parties' versions of the facts as to this issue is irrelevant to the court's analysis herein.

**5.** The parties have stipulated as to the legibility or illegibility of ninety of the ninety-one indorsements at issue. According to the parties, fourteen indorsements were legible and seventy-six were illegible. *Id.* at ¶¶ 16, 23, 30, & 41. The parties apparently could not reach an agreement as to one indorsement. *See id.* at ¶ 23.

## II. *Discussion*

Although it did not explicitly say so in the one page it devoted to this argument in its moving brief (or in its reply brief), Midlantic's position is that § 3–405(1)(c)[6] of New Jersey's Uniform Commercial Code (the "UCC" or the "New Jersey Code")—the so-called "faithless employee/fictitious payee" rule—bars plaintiffs' action to recover from Midlantic losses they incurred as a result of Weisman's forged indorsements. Plaintiffs, on the other hand, contend that the "faithless employee/fictitious payee" rule does not apply to Midlantic because Midlantic failed to exercise ordinary care and good faith in accepting for deposit checks containing illegible indorsements. Plaintiffs further argue that, without such a defense, Midlantic is liable for conversion[7] under N.J.S.A. 12A:3–419(1)(c).

 As part of an effort to establish uniform rules governing the relationships between banks and their customers, the UCC attempts to allocate the losses caused by forged indorsements according to the relative responsibilities of the parties to a given transaction. *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 759 (3d Cir.1990) (citing *Western Casualty & Sur. Co. v. Citizens Bank of Las Cruces*, 676 F.2d 1344, 1345 (10th Cir.1982); Hayes, *U.C.C. Section 3–405: Of Imposters, Fictitious Payees, and Padded Payrolls*, 47 Fordham L.Rev. 1083, 1083 (1979)). As a general rule, "forged indorsements are ineffective to pass title." *Western Casualty*, 676 F.2d at 1345 (quoting J. White & R. Summers, *Uniform Commercial Code* § 16–8, at 631 (2d ed.1980)). Indeed, an instrument is typically considered "converted . . . when it is paid on a forged indorsement." N.J.S.A. 12A:3–419(1)(c). Thus, a drawee bank generally may not debit a drawer's account when it pays over a forged indorsement. *McAdam*, 896 F.2d at 759 (citing J. White & R. Summers, *Uniform Commercial Code* § 15–1, at 652 (3d ed.1988); *Kraftsman Container Corp. v. United Counties Trust Co.*, 169 N.J.Super. 488, 493, 404 A.2d 1288 (Law Div.1979)). If it does, "the drawer can usually require the drawee bank to recredit the drawer's account" on the basis that the check was not "properly payable" under § 4–401. *Western Casualty*, 676 F.2d at 1345. A drawee bank that has recredited a drawer's account after paying over a forged indorsement can usually shift its loss "upstream," however, to banks that have previously accepted the check (e.g., the depository bank) by way of an action for breach of warranty of good title. *McAdam*, 896 F.2d at 759 (citing N.J.S.A. §§ 12A:3–417(1)(a); 12A:4–207(1)(a)). As a result, the ultimate loss typically "falls on the party who took the check from the forger [e.g., the depository bank], or on the forger himself." *Id.* (citing *Perini Corp. v. First Nat'l Bank of Habersham County*, 553 F.2d 398, 404 (5th Cir.1977)).[8]

Section 3–405(1)(c) creates a limited exception to this general rule, however, when an employee, intending the named payee to have no interest in the instrument, causes his or her employer to draw a check made payable to one of its customers. *Id.* As the comments to 12A:3–405 explain, the "conversion rule of section 3–419 and the warranty rules of sections 3–417 and 3–418" do not apply to the situation where a "faithless employee . . . uses a fictitious-payee scheme to defraud his employer." N.J.S.A. § 12A:3–405, New Jersey study comment 1. In such a case, the banks are shielded from liability because of the

---

6. Unless noted otherwise, any discussion of New Jersey's Uniform Commercial Code, N.J.S.A. 12A:3–101 et seq., refers to the 1961 version of the statute, which was in effect until June 1, 1995.

7. While plaintiffs addressed in their brief only their conversion claim, the court presumes that plaintiffs intended their position to apply equally (with the possible exception of their fraud claim) to their remaining causes of action.

8. The general UCC framework can, therefore, be summarized as follows: the drawer can avoid liability on a check with a forged indorsement, the drawee bank can shift its loss upstream to other banks, and the party who took the check from the forger (i.e., in most instances, the depository bank) ultimately suffers the loss. Of course, if the forger were able or available to satisfy the judgment, there would be no need for such rules. In many, if not most, cases, however, the forger is judgment proof (as is Weisman, who filed for bankruptcy).

feeling, largely unarticulated, that the loss should be taken by the drawer (employer). [Its] employee, acting within the scope of his authority, caused the loss; [it] is in the best position to prevent it by supervision and by using care in hiring employees; [it] has as good a chance as the bank to distribute the risk to all of society through the use of insurance.

*Id.; see also Brighton, Inc. v. Colonial First Nat'l Bank,* 176 N.J.Super. 101, 118–21, 422 A.2d 433 (App.Div.1980), *aff'd,* 86 N.J. 259, 430 A.2d 902 (1981) (finding that § 3–405, if it applies, bars all causes of action, with the exception of fraud and conspiracy to commit fraud, by a drawer/employer against a depository or collecting bank); N.J.S.A. 12A:3–405, Uniform Commercial Code comment 4.

The crux of this court's analysis, therefore, is whether § 3–405(1)(c) applies to Midlantic; if it does, summary judgment must be granted in favor of Midlantic on the theory that plaintiffs, as Weisman's employers, were in a better position to prevent or ameliorate the consequences of their employee's financial abuses. The 1961 version of N.J.S.A. 12A:3–405, which was in effect for all but the last month of Weisman's scheme, provided, in pertinent part, as follows:

(1) An indorsement by any person in the name of a named payee is effective if

\* \* \* \* \* \*

(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

N.J.S.A. 12A:3–405(1)(c). Given that an employee (Weisman) of the employers/drawers (The Guardian/GIAC and The New England) supplied the employers/drawers with the names of payees (the policyholders and annuity contract holders) intending that the payees have no interest in the instruments, Midlantic's argument appears, at first glance, to be viable. The inquiry does not end there, however.

As a threshold requirement, the depository bank (Midlantic) must first show that the forged indorsements on the checks it accepted were "in the name of the named payee." N.J.S.A. 12A:3–405(1). Although

the 1961 version of the New Jersey Code does not define or explicate this requirement, courts have consistently required banks to use ordinary care and accept for deposit only instruments where the indorsement is *"substantially identical* to the name of the named payee." *Kraftsman,* 169 N.J.Super. at 497, 404 A.2d 1288 (emphasis added); *see also Consolidated Public Water Supply v. Farmers Bank,* 686 S.W.2d 844, 850 (Mo.Ct.App. 1985); *Twellman v. Lindell Trust Co.,* 534 S.W.2d 83, 93 (Mo.Ct.App.1976); *Travco Corp. v. Citizens Federal Sav. & Loan Ass'n,* 42 Mich.App. 291, 201 N.W.2d 675, 676 (Mich.Ct.App.1972). As the court in *Kraftsman* held, a "bank may not pay over such an indorsement with impunity" and is not protected by § 3–405 if it does not otherwise satisfy its "obligation of good faith" under § 1–203. 169 N.J.Super. at 495, 404 A.2d 1288. Accordingly, the *Kraftsman* court held that "checks exhibiting *illegible indorsements* ... raise[d] a question of fact as to whether payment by the bank constitute[d] a lack of 'good faith' on the part of the bank." *Id.* at 497, 404 A.2d 1288 (emphasis added).

The *Kraftsman* court could, and should, have gone one step further. While the court agrees that a factual question as to the bank's good faith might be raised when it accepts for deposit checks containing illegible indorsements, the acceptance of such checks, more importantly, renders the "faithless employee/fictitious payee" exception inapplicable because, as a matter of law, illegible indorsements do not satisfy the threshold statutory requirement under N.J.S.A. 12A:3–405(1). When this requirement is not satisfied (i.e., when the forged indorsements are not substantially identical to the names of the named payees), the forged indorsements cannot be considered effective as against the drawer and the general rules discussed must apply.

Parenthetically, this analysis is consistent with the following provisions of the current version of the New Jersey Code, which became effective on June 1, 1995:

b. For the purposes of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer

entrusted an employee with responsibility with respect to the instrument and the employee ... makes a fraudulent indorsement of the instrument, *the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person.* If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

c. Under subsection b. of this section, *an indorsement is made in the name of the person to whom an instrument is payable if it is made in a name substantially similar to the name of that person....*

N.J.S.A. 12A:3–405(b) & (c) (current version) (emphasis added).

■ Once the foregoing analysis is properly understood, applying it to the case at hand is a simple task. The parties have stipulated that the forged indorsements on seventy-six of the ninety-one checks deposited into Weisman's Midlantic account were "illegible." *Final Pretrial Order*, at § 3, ¶¶ 16, 23, 30, & 41. Given this undisputed fact, Midlantic has not satisfied its statutory burden of showing that it accepted for deposit checks containing

indorsements that were "substantially identical," *see Kraftsman,* 169 N.J.Super. at 497, 404 A.2d 1288, or "substantially similar," *see* N.J.S.A. 12A:3–405(b) & (c) (current version), to the names of the named payees.[9] Summary judgment as to the seventy-six checks containing illegible indorsements must, therefore, be denied. Because there is no genuine dispute regarding the legibility of fourteen of the ninety-one checks, however, and because no genuine issue has been raised regarding any other issue [10] that would preclude summary judgment, *see Brighton,* 176 N.J.Super. at 120, 422 A.2d 433, the court will grant Midlantic's motion as to those fourteen checks pursuant to N.J.S.A. 12A:3–405(1)(c).

### III. *Conclusion*

For the reasons discussed above, defendants' motion for summary judgment/partial summary judgment will be granted in part and denied in part as to Midlantic and granted, as unopposed, as to the remaining movants. As a result, summary judgment will be entered in favor of Merchants and Wachovia and partial summary judgment will be entered in favor of Midlantic, Chemical, and Corestates. This will result in the dismissal of plaintiffs' complaint against Merchants and Wachovia and partial dismissal of plaintiffs' complaint against Midlantic, Chemical, and Corestates. Plaintiffs' claims against the fictitious defendants (i.e., ABC Bank, John

---

9. Midlantic has not merely failed to satisfy its burden on summary judgment of demonstrating that there are no genuine issues of material fact as to whether it accepted for deposit checks containing indorsements that were "substantially identical" or "substantially similar" to the names of the named payees. Based on the parties' stipulations, seventy-six of the indorsements *conclusively did not satisfy this statutory requirement,* thereby rendering the "faithless employee/fictitious payee" exception inapplicable and, as a result, the indorsements "ineffective" as against plaintiffs. N.J.S.A. 12A:3–405(1). While this ruling resolves all factual and legal issues relating to § 3–405, the court will not, *sua sponte,* order partial summary judgment in favor of plaintiffs, particularly because certain issues, unaddressed by the parties, might still have a bearing on such a ruling. The court, therefore, anticipates that a motion for partial summary judgment on behalf of plaintiffs will be forthcoming.

10. Plaintiffs also argued that Midlantic's motion should be denied in its entirety because (i) they are subrogated to the rights of the named payees and (ii) there is a factual dispute regarding whether Midlantic willingly participated in Weisman's fraudulent scheme. There is no legal basis to support the former argument and, although a fraud action would be permitted under *Brighton,* no factual basis to support the latter. As to the latter, for example, four of Midlantic's employees (Julia Bolcar, Marlene Colacova, Diane O'Connor, and Dara Tanzloa) have certified that they did not participate in any fraudulent activity with Weisman and are not aware of anyone at Midlantic who did so. Plaintiffs have neither rebutted the Certifications nor otherwise raised any genuine issue of material fact regarding Midlantic's knowing participation Weisman's scheme.

Does 1–10, John Doe Bank 1–10, and John Doe Individuals 1–10) will also be dismissed.